SAUNDERS et al. v. ALLEN.

(Circuit Court of Appeals, Second Circuit. March 13, 1894.)

No. 75.

1. PATENTS—INVENTION—PIPE CUTTERS.
    There is no invention in placing antifriction rollers in the jaw of a pipe cutter opposite the ordinary rotary cutter, when such rollers have already been combined with a cutter in which a fixed knife was substituted for the rotary cutter. 53 Fed. 109, affirmed.

2. SAME—INCREASED SALES AS EVIDENCE OF INVENTION.
    A pipe cutter was seemingly without patentable invention, but it was shown that sales thereof had increased from 3,926 in 1885 to 10,727 in 1891. There was nothing to show to what extent price, workmanship, liberal discounts to dealers, and extensive advertising had contributed to the success in introducing the tool. It appeared, also, that an old form of cutter still remained in very general use, and that there was a strong competitor in another patented cutter. Held, that the increased use was not sufficient to show patentable invention.

3. SAME—ANTICIPATION—PLEADING AND PROOF.
    The giving of notice of prior patents relied on to support the defense of anticipation, by stating the names of the patentees and the dates of their patents, is sufficient to warrant the introduction of such patents, if they describe the same invention, even though they do not claim it.

4. SAME—PARTICULAR PATENT.
    The Saunders reissue patent No. 10,021, for a pipe cutter, is void, as to the second claim, for want of invention. 53 Fed. 109, affirmed.

Appeal from a Decree of the Circuit Court, Southern District of New York, dismissing complainants' bill. The suit was brought by Alexander Saunders and others against James P. Allen, for infringement of letters patent, reissue No. 10,021, dated January 31, 1882, to Andrew Saunders, for a pipe cutter.

James A. Whitney, for appellants.

Livingston Gifford, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. A pipe cutter is a tool, worked by hand, which grasps the pipe to be cut between two jaws, one or both of which is provided with a knife, and is then revolved around the pipe, the jaws being gradually brought nearer together, as the cut progresses, by means of a set screw or other device. So much of the invention as is covered by the second claim, which is the only one defendant is charged with infringing, is thus described in the patent:

"The invention further comprises a novel combination of an adjustable rotary cutter with the stock of a pipe-cutting device, and with two bearing or antifriction rollers so placed in said stock as to support and steady the pipe without material friction during the operation of the rotary cutter, in severing the same, and a screw for forcing the cutter against the material to be cut."

The stock is simply the support of the movable and moving parts of the apparatus. It is a C-shaped piece of metal, of which the lower curve constitutes one jaw of the tool, and the upper curve the other. As represented in the drawing and described in the

patent, the pipe to be cut is placed between the jaws resting at one side against the antifriction rollers, and with the rotary cutter pressed against its opposite side by means of the screw, which acts upon a pivoted arm in which the cutter wheel revolves. This pivoted arm is not an element of the claim averred to be infringed. The implement is then turned around the pipe in the usual manner of a pipe cutter (rotating the tool by means of the handle), and, as fast as the rotary cutter cuts into the pipe, it is fed inward by turning the screw in the requisite direction, so that, after a few revolutions of the implement around the pipe, the latter is severed. The claim declared on is as follows:

"(2) In a pipe-cutting implement, the combination of the antifriction rollers, a, and an adjustable rotary cutter, D, with a stock, and a screw for forcing the cutter towards the material to be cut, substantially as and for the purposes herein set forth."

The stock, the opposed jaws, and the use of a screw to make the jaws bite are concededly old. The complainants' only claim to invention is found in the combination of the rotary cutter in the upper jaw with the broad-bearing, antifriction rollers in the lower jaw. The circuit judge found that there was not patentable invention in this combination. This is a question to be determined by a consideration of the state of the art.

The complainants' implement is, as their counsel contends, an improvement on the Stanwood pipe cutter, patented in 1859, and which went into such general use that it is still commonly spoken of as the "ordinary pipe cutter." It has the stock, jaws, and screw, and the rotary cutter placed in the upper jaw. The pipe to be cut rests in the lower jaw, however, without the interposition of anything to relieve friction. The manifest drawback to this tool was that, in consequence of the friction, it required the exertion of more strength to turn it, and it had some tendency to twist the pipe. Its lower jaw had a broad bearing, which kept the cutter straight. The only change which complainants have made in this old form of cutter is to relieve the friction by placing two rollers in the lower jaw. Such a mode of relieving friction is so well known in the arts that it would seem not to require patentable invention to suggest its use in a pipe cutter to meet a recognized defect. The various patents introduced in proof, moreover, show that friction was understood to be a drawback in pipe cutters, and that antifriction rollers were used to avoid it, before the particular combination in suit was devised. In letters patent granted to Foster (No. 65,066) May 28, 1867, there are shown two friction rollers in the lower jaw, arranged substantially as are the complainants', "so as to bear against the pipe, receive all the pressure and working of the pipe, and thus relieve the claw." Had Foster retained the rotary cutter, his tool would have been a complete anticipation of complainants' device. He undertook, however, to further improve the Stanwood cutter by substituting a fixed knife blade for the rotary cutter in the upper jaw. He states that the pin of the rotary cutter has to bear the whole pressure, and, as both pin and cutter are made of small dimensions, they

soon wear out, and require to be frequently replaced. To remedy that difficulty, Foster substituted the stronger and more substantial fixed knife. Because he thus pointed out a mode of overcoming one difficulty, and embodied his supposed improvement in his patent, that patent none the less pointed out the device he embodied therein for overcoming the other difficulty. Given the Stanwood cutter and the desirability of relieving friction between the lower jaw and the pipe, and given the Foster antifriction rollers as a means of relieving such friction, there could be no patentable invention in placing the latter in the former, retaining still its rotary cutter.

Other patents, also, intermediate Stanwood's and the one in suit, show variations of combination which relieve friction in pipe cutters by the use of rollers. Getty's (No. 67,530, August 6, 1867; reissue 3,549, July 13, 1869) shows a V-shaped cutter in the lower jaw, and rollers on the upper, giving the pipe "a recess in which to lie, regardless of size." Howarth's (No. 52,715, February 20, 1866) has a rotary cutter in the upper jaw, and two cutters in the lower. It has the advantage of being capable of use where the angle of a wall or floor prevents an entire revolution of the tool around the pipe, and the disadvantage of requiring more care to make the cuts true, as the knife edges of the lower jaw do not present a broad-bearing surface for the pipe to rest on. The British patent to Liernur (No. 1,648 of 1873) shows a "screw-cutting gear," having practically jaws, which the specification states may be so adjusted that the cutters will effect "a circular incision, the same as is effected by the well-known gas-pipe cutter." One modification of this, shown at Fig. 14, has two rotary cutters on the lower jaw and two antifriction rollers on the upper one.

In view of the state of the art as thus disclosed, mere mechanical ingenuity, and that of no high grade, was sufficient to devise the improvement upon the old Stanwood cutter, which consists solely in the interposition of antifriction rollers between the lower jaw and the pipe to be cut, their bearing surfaces forming a recess in which the pipe may rest.

Nor do we find in the record sufficient to warrant any different conclusion upon the theory that the pipe cutter of the patent supplied a long-felt want, which mechanics had tried to supply unsuccessfully, nor that it has driven other competitors out of the market because its superior merits have commended it to the public. In McClain v. Ortmayer, 141 U. S. 428, 12 Sup. Ct. 76, it is held that "the extent to which a patented device has gone into use is an unsafe criterion, even of its actual utility;" and in Duer v. Corbin, etc., Co., 149 U. S. 223, 13 Sup. Ct. 850, it is pointed out that other considerations than that of novelty enter into any question of the popularity of a patented article. The Stanwood cutter itself is still in very general use, and the three-wheel cutter of Howarth, in a modified form known as the "Barnes Cutter," is apparently a strong competitor with the one-wheel cutter of the patent in suit. There is nothing to show to what extent price, workmanship, liberal discounts to dealers, and ingenious and extensive advertising may have contributed to whatever success has attended the effort

to introduce complainants' tool, and, in the absence of any information on these points, there is not, in the circumstance that the sales of this tool have increased from 3,926 in 1885 to 10,727 in 1891, sufficient to warrant the conclusion that there was any patentable invention in devising it, in view of the state of the art as indicated supra.

The appellants' objection to the competency as proof, under the pleadings, of the letters patent to Foster, Getty, and others, is without merit. The fourth defense which may be proved under the general issue (Rev. St. U. S. § 4920) is: "Fourth. That [the patentee] was not the original and first inventor or discoverer of any material and substantial part of the thing patented." Manifestly, the last two words refer to the "thing patented" by him,—the patentee whose patent is sued upon. The third defense authorized by the same section is that "it had been patented or described in some printed publication prior to his supposed invention or discovery thereof;" and the fifth is that "it had been in public use," etc., "more than two years," etc. The section makes notice as to proof to be offered a prerequisite to the introduction of evidence in support of either of these defenses of previous invention, knowledge, or use. Such notice shall state "the names of patentees, and the dates of their patents, and when granted, and the names and residences of the persons alleged to have invented, or to have had prior knowledge of, the thing patented [meaning, evidently, patented by the letters patent in suit], and where and by whom it had been used."

The notice in this case (which was contained in the answer) stated the names of the patentees and the dates of their patents, in which patents defendant contended that the material and substantial parts of the alleged improvement or supposed invention of Saunders were fully described and publicly made known. This was quite sufficient to warrant the introduction of those patents, provided they did in fact describe or disclose the alleged invention or discovery, whether they claimed it or not. Every invention disclosed in a patent, and not claimed, is dedicated to the public, and no one may thereafter appropriate it. It becomes thenceforth as much a part of the art as does the invention disclosed in the same patent, and also claimed therein. The question whether an individual is, or is not, an original and first inventor or discoverer, can only be determined by comparing what he did or discovered with that body of information upon the subject with which he and all the world are chargeable, and which is called the "state of the art." Usually, the clearest conception of what that art is will be derived from a study of prior patents, which are open to the public (sections 892, 486, 490, 491), and assumed to be within the knowledge of all from the date of their issuance and recording in the patent office, irrespective of the fact whether the plaintiff or his assignor ever saw them, and without proof of the precise date when they were printed.

The decree of the circuit court is affirmed, with costs.