## STRONG v. WATERS.

(Supreme Court, Appellate Division, Third Department.   March 2, 1898.)

EVIDENCE—PAROL—ADMISSIBILITY TO VARY WRITING.

Parol evidence is inadmissible to give the word "well" in a written contract for drilling a well any other than its usual and ordinary meaning, in the absence of any further provision defining the character of the well to be drilled.

Merwin and Putnam, JJ., dissenting.

Appeal from judgment on report of referee.

Action by Barzell M. Strong against Cyrus Waters to recover for work done and material furnished under a contract to drill a well. From a judgment in favor of defendant, plaintiff appeals.   Reversed.

Action to recover under a written contract to drill a well for defendant. That part of the contract material to the questions presented reads as follows: "Witnesseth, party of the first part agrees to drill a well for party of the second part at $2.50 a foot, and furnish pipe for pump without charge, and is to be relieved from all responsibility when he stops drilling; in case of a flowing well, to be two dollars per foot.   Party of the second part agrees to pay party of the first part $2.50 for each and every foot so drilled, and purchase a pump and cylinder."   The plaintiff drilled a distance of 90 feet.   At a distance of 23 feet to the rock and 14 feet into the rock he stopped drilling. At that point he had reached water.   He subsequently continued to drill a further distance of 53 feet into the rock, and then ceased work.   No more was done after that.   He brings this action to recover, under the contract, for drilling the 90 feet at the rate of $2.50 per foot, and also for some tubing and a pump furnished defendant.   The referee found as a fact that plaintiff had not completed the well, that the contract was an entire one, and that, therefore, he could not recover.   From the judgment entered against him upon this decision the plaintiff brings this appeal.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

S. A. Beman, for appellant.

Shedden & Booth, for respondent.

PARKER, P. J.   Upon the trial of this action the referee allowed the negotiations of the parties prior to the execution of the written contract, and also their subsequent conduct under it, to be given in evidence on the part of the defendant and under the plaintiff's objections.   He stated that he did not receive it for the purpose of altering or modifying the written contract, and he has found as a fact that the written contract was the only one made between the parties. Nevertheless, he has found that the plaintiff did not complete the well, and has, therefore, dismissed the complaint on the ground that the contract being an entire one, the plaintiff could not recover anything until he had fully performed it.   He has also refused to find that the well was incomplete on account of improper piping, and hence it is plain that he has based his decision on the fact that the well did not go as deep as the contract required.   Thus it appears that he must have given a meaning to the word "well" derived from the evidence so taken, and the question is presented whether such evidence was properly received for the purpose of explaining the meaning of that word.   The evidence so received was substantially

to the following effect: That defendant, during the negotiations, told the plaintiff that he did not want a "common, ordinary well," as he had six or seven on his farm; that he wanted to get water from the bedrock, hundreds of feet below the surface, and to have the surface water kept out; and that plaintiff told him he could drill such a well, and keep out the surface water, and that he would continue to drill five or six hundred feet if he did not get a flowing well before that; that subsequently, when plaintiff left the work, after drilling 90 feet in all, some 67 feet of which was in the rock, he told defendant he would come back in the spring, and complete the well. In my opinion, there was not such an ambiguity in the written contract as warranted the receipt of the foregoing evidence to explain it. It may be true that the word "well" does not, in itself, convey a distinct idea of the precise thing which the parties intended should be produced. There are dug wells and driven wells and drilled wells. So there are wells of various depths,—those intended to furnish surface water only, and those used to bring up water from a great depth below the rocks. And if a contract obligates a party to construct for another "a well" the question is at once suggested, what kind of a well? There is an uncertainty as to the precise meaning in which the phrase to "construct a well" or to "drill a well" is used by the parties. But it is an uncertainty that arises at once upon the reading of the contract. We do not have to wait until some other fact is brought to our knowledge before the uncertainty is apparent, but the doubt is suggested at once, and by the phrase itself. Hence it is an ambiguity which the law terms a "patent ambiguity," and, as a general rule, such a one may not be cured by proof of what the parties intended by the use of the doubtful phrase. The reason of that rule is said to be "that, if a meaning should be assigned by the aid of extrinsic evidence, to that which is apparently destitute of meaning, or if the same instrument should be made to operate in different ways, according to the weight of oral evidence, the effect would depend, not upon the instrument, but upon the force of the oral evidence, and thus the latter would be substituted for the former." 2 Am. & Eng. Enc. Law (2d Ed.) pp. 289, 290. The receipt of this evidence illustrates the propriety of this rule. By adopting the evidence of the defendant as truthful, the referee has construed this written contract to require the plaintiff to drill to a depth sufficient to procure water from the bedrock. Had he believed the plaintiff's version, and rejected that of the defendant, he would have construed such writing to impose a very different obligation. It is to be noticed that this evidence was not received as defining the usual and ordinary meaning of the word "well." It was received and allowed to define the word "well" as used by the parties to this contract. Defendant testified, "I told him I did not want a common, ordinary well." And thus, under the guise of explaining the word "well," there has been read into this writing an agreement to drill an uncommon and extraordinary well, viz. one that will bring up water from 500 to 600 feet below the surface. Although the evidence was not received for the purpose of altering or modifying the written contract, the attempt to explain a "patent

ambiguity" necessarily results in such an alteration; and it seems to me that the case is before us in substantially the same condition in which it was when reversed upon the former appeal. 80 Hun, 73, 30 N. Y. Supp. 64. The record does not show that the plaintiff has anywhere consented to the receipt of this evidence, or waived his objection thereto. He duly objected and excepted when it was offered, and his subsequent request to the referee was but a request that he put distinctly upon the record his ruling upon the subject. That ruling, in effect, was that the evidence was not admissible to vary the written contract, but was admissible to explain it; and in this ruling I think he erred. This reasoning applies to the case, and results in a reversal of the judgment, even if we concede that an ambiguity arises in the use of the word "well" without other provisions specifying what kind of a well is intended. But I think it clear that the word, in the written contract, must be considered as used in its usual and ordinary sense,—in the sense which the defendant meant when he testified he had six or seven "common and ordinary wells." And clearly, in that sense, a well drilled 500 or 600 feet deep, and sufficient to bring up water from the bedrock below, is not indicated. If one drills a well down to the rock, and there gets water, I conclude he has performed his contract to "drill a well," in the absence of any further provisions defining the character, depth, or purpose of the well. Whether the plaintiff could recover, under this contract, for continuing to drill after he had completed the well, is a question not now presented to us.

The written contract further provides that the plaintiff "is to be relieved from all responsibility when he stops drilling," and it is urged upon us that under this provision he had the right to stop drilling whenever he chose. I am not at all clear what purpose this provision was intended to accomplish, but if it is to indicate that any different well from the ordinary surface water well was to be drilled I think it should be construed as securing to plaintiff the right to determine how far he should drill in the effort to get a different one. But its meaning is so obscure that I have not considered it in the view which I have taken of this case. For the errors above stated, the judgment must be reversed.

Judgment reversed, referee discharged, and a new trial granted; costs to abide the event.

LANDON and HERRICK, JJ., concur.

MERWIN, J. (dissenting). It was stipulated by the respective counsel that no evidence was received by the referee for the purpose of varying or adding to the written contract. No point is made by the appellant as to any error in receiving any such evidence. Both parties evidently intended to follow the decision on the former appeal, and have assumed that it was followed. So I think there is no ruling as to the evidence in that respect that we should consider. The referee found upon sufficient evidence that when the plaintiff stopped work in November, 1887, neither party considered the well completed, and the plaintiff did not claim it was completed, but told

the defendant that he would return in the spring, and complete the job. The referee found that the plaintiff had not completed the well, and that he could not recover for what he had done, and that the defendant could not recover for the labor, materials, and board he had furnished. Before the plaintiff stopped, some water was reached, but the evidence was conflicting as to whether the supply was sufficient to make it a well within the contemplation of the parties. There is no finding that it was such a well, and therefore the plaintiff had no right to recover on the theory that he had completed the well with an adequate supply of water. The conduct of the parties after a contract is made is admissible for the purpose of showing a practical construction (Tilden v. Tilden, 8 App. Div. 99, 40 N. Y. Supp. 403), and in this case should be deemed to be controlling in favor of the proposition that the plaintiff did not show a right to recover, unless it be true, as claimed by the plaintiff, that he had an option as to how long he would keep on, and could stop at any time and recover the price. That plaintiff had such an option is argued from the expression in the contract, "and is to be relieved from all responsibility when he stops drilling." No intention to give plaintiff such an option is, I think, manifest from the contract. Why was a pipe provided for if the existence of a supply of water was not contemplated? If a flowing well, the price was to be less. Why this provision if plaintiff could, at his pleasure, stop? The reasonable construction of the contract, in the absence of proof of subsequent conduct, would, I think, be that the plaintiff could stop when he chose, and not be responsible to the defendant for damages, or for labor, materials, or board which the defendant, under the contract, was obliged to furnish, but could not stop and recover the price unless a well supplying a reasonable amount of water was furnished for the use of defendant. This construction is fortified very strongly by the subsequent conduct of both parties. The plaintiff, in the evidence given on his part, claimed that when he stopped he tested the water, and found an adequate supply, and this was given as a reason for stopping. The referee was, I think, justified in finding that the plaintiff could not recover.

PUTNAM, J., concurs.