WOLFF TRUCK FRAME CO. v. AMERICAN STEEL FOUNDRIES et al.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1912. Rehearing Denied March 29, 1912.)

No. 1,828.

1. PATENTS (§ 159*)—VALIDITY—SUFFICIENCY OF DESCRIPTION—ADMISSIBILITY OF PAROL EVIDENCE.

Where a mechanical patent does not disclose on its face the real invention of the patentee, but the element of the combination in which only such invention resides, although described and claimed, and shown in the drawings, in combination with the other elements shown, and so far as appears from the specification and claims, is wholly without use or function, it cannot be aided by the oral testimony of the patentee explaining the problem to be met and how he solved it, although such testimony shows that he made an actual invention of merit.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 233, 236; Dec. Dig. § 159.*]

2. PATENTS (§ 328*)—VALIDITY—CAR TRUCK.

The Hardie patent, No. 569,044, for a metallic car truck, is void because it does not disclose the actual invention which was of a truck adapted for use with any bolster then known, and especially the type having column guides, whereas such feature is nowhere explained, nor is it necessary or useful with the type of bolster shown in the drawings.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the American Steel Foundries and the J. S. Andrews Company against the Wolff Truck Frame Company. Decree for complainants, and defendant appeals. Reversed.

For opinion below, see 189 Fed. 601.

The case is thus stated by the trial judge: "The bill charges infringement of claims 2, 3, and 6, of patent No. 569,044, granted to J. S. Hardie on October 6, 1896, for a metallic car truck. The claims in suit read as follows, viz.:

"2. A car truck, comprising two truck-arches rigidly connected with each other, each truck-arch having a transverse opening, the upper portion of which is contracted, a truck-bolster fitted in the upper portion of said openings, and springs seated in the openings and below the truck-bolster and respectively bearing against the truck-bolster, substantially as described.

"3. A truck having two truck-arches, each formed with an opening, the upper portion of which is contracted, a truck-bolster having its ends respectively fitted within the upper portions of said openings, and means within the upper portions of said openings, and means within the openings and be-

low the truck-bolster by which the truck-bolster is held in place, substantially as described. * * *

"6. A truck having a truck-arch formed with an opening, the central portion of which is enlarged over the terminals, a spring-seat fitted within the contracted lower portion of the opening, springs rested on the spring-seat, and a truck-bolster fitted within the upper contracted portion of the opening, and engaged by the springs, substantially as described.

"The invention here involved consists in a combination truck having, as an essential element, a transverse opening in each truck-arch or side-frame of such a form as enables its use with all kinds of bolsters. This is the only structural novelty here relied on. The new feature of this opening is found in the contracted upper portion, or, as stated in claim 6, in the enlarged central portion thereof, whereby a bolster constructed with column guides, integral or otherwise, upon its opposite sides, may be passed through the enlarged portion of the opening in the side-frame of a one-piece side-frame and then be raised into and maintained in contact with the sides of the contracted upper portion of the opening in the arch or side-frame, so as to resist any substantial backward and forward movement of the bolster and make a comparatively rigid connection between the two side-frames. The advantage claimed for the device is that it provides a simple and durable construction which is not liable to get out of order; one which is readily set up without the aid of skilled labor, and one which may be conveniently inspected and repaired, and which is, adapted to use with any bolster. The enlarged opening, however, would seem to be of value only in connection with bolsters equipped with column guides or lips. The defenses are lack of patentable novelty, noncompliance with the statute as to what the invention consists in, and want of infringement.

"The application upon which the patent in suit was granted was filed January 25, 1896. Of the four original claims asked for, none claimed the contracted upper part or the enlarged central portion. Original claims, 1, 2, and 1 were rejected. Original claim 3, which covered principally the means for placing and holding the bolster in the contracted upper part, was allowed. Thereupon Hardie canceled original claims 1, 2, and 4, and added claims 2 to 9, inclusive, among which appear the claims in suit. Now for the first time appears a claim for the contracted upper end and the enlarged central portion of the opening. No new specification or drawings were filed, nor was the change in the claims sworn to. The drawings disclosed the contracted upper portion and the enlarged central portion of the opening, but no reference is made thereto in the specification."

It further appears in evidence that the patentee, Hardie, at the time of his invention in 1895, was a car repairer in the Missouri Pacific Railroad shops at Eldorado, Kan. In his work there came under his notice a Schaffer bolster which is a cast steel bolster formed in one piece, having all the accessories required in a bolster including column guides near the end. Studying on this bolster, Hardie conceived the idea of making an all steel truck frame to work with the bolster.

He says: "My first idea was to design a solid, cast steel, rounding arch. This, at the start, would provide a better appearing truck than the sharp corners or bends in the ordinary arch-bar. The next and great difficulty was to provide means for introducing and getting the truck-bolster to its position so that the column guides would engage the truck frame on its inner and outer face. To overcome this difficulty, I tried several methods. One was by means of tipping the bolster in an angling position introducing it in this way through the truck frame to its position, and then turning it down in working position, then raising it up to place. I found to do this it was necessary to make the transverse opening in the truck side-frame so wide that, when bolster was turned to working position, the guide lips barely touched the truck frame on its inner and outer face. My next idea to overcome this difficulty was to leave the side frame open at the top so that bolster could be lowered to position in this manner, and then provided a cast steel section by means of lips in the side-frame to slip in over the top of the bolster. After figuring on these different methods a while I finally discovered that by widening the transverse opening near the center and down towards the lower end the bolster could be introduced in that manner and raised to position. This enlarging of the side opening in no way interfered or was detrimental to the design of the truck. I also figured that my design of truck provided an absolutely safe truck against breakage of bolts or loss of nuts from the bolt, as in no case would it affect the safe riding or movement of the truck.

SCHAFFER BOLSTER.

BOLSTER OF HARDIE PATENT.

"Referring back to the transverse opening in the side-frame, I found it was necessary to make the opening in the frame deep enough to allow the introduction of the bolster of the design known as the fish-belly type, hung so low the opening must necessarily be deep enough to take care of same. This being the case, after the introduction of the bolster and the usual wood shim under the same, it was necessary to provide what I have termed in my patent 'compression wedges,' to raise and hold the bolster up to place. Otherwise, the bolster would have ridden so low on truck that only a small portion of the column guides would have had a bearing on the side-frame or engage the same."

To carry out his idea, he made drawings and sent them to a firm of patent lawyers of New York City, who advertise extensively. The witness was then asked what he showed in his original drawings sent to his New York solicitors. The question was objected to as irrelevant and immaterial because the questions at issue must necessarily be decided upon the disclosures contained in the patent itself and independently of any transactions or communications between the inventor and his attorneys, and independently of any disclosures made to them and not contained in the patent. In his drawings Mr. Hardie copied the design of the Schaffer bolster. He further stated,

under objection, the communications between himself and his attorneys to the effect that they had found a patent on the Schaffer bolster, and advised him that therefore he could not use it. He wrote them that, if the Patent Office rules forbade the use of the Schaffer bolster, another would be substituted. The result was that the Hardie bolster shown in the cut was substituted for the Schaffer bolster, and patent application and drawings made accordingly.

George L. Wilkinson, for appellant.
Charles C. Linthicum and J. Edgar Bull, for appellees.

Before BAKER and SEAMAN, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge (after stating the facts as above). [1] The gist of the testimony so taken under objection is that Hardie's real invention was a truck adapted for use with any bolster then known, and particularly suited to that of the type of the Schaffer bolster, having column guides, but which cannot be inserted into the side-frames unless the opening is enlarged in the manner shown in the patent drawings. But as the purpose of this enlargement is not explained in the patent or file wrapper, and since the bolster shown in the patent needs no such enlargement (working just as well with a square opening), a situation results where the sole patentable novelty asserted resides in an element wholly without use or function, and which might just as well have been entirely omitted unless explained or aided by something outside the four corners of the patent itself. From this it will be seen how very important this testimony becomes. Without it the patent as now construed by appellees has no force or effect. It may well be called Hardie's reissue. Moreover, his story is most persuasive, almost pathetic. His car truck has been highly successful in the hands of his assignee, as evidenced by its enormous sales. The picture of the poor but brilliant inventor being cheated out of his valuable discovery by the misapprehension of his solicitors is an appealing one, well calculated to influence any court. It was said upon the argument that this testimony was taken without a shadow of doubt of its admissibility; and it is undeniable that evidence to show the patentee's equities is very common in patent cases, while motions to strike out such evidence are correspondingly rare. Therefore the question of admissibility becomes a vital one upon which alone depends the validity of the patent.

The patent record in suit presents a case quite similar to that of a patent ambiguity in a contract, which, as Lord Bacon said, could not be "holpen by averment." The enlarged opening appears in the patent drawings, and is referred to in the amended claims, but without any explanation of its purpose, or any suggestion of usefulness or function. After reading all there is in the patent, the uncertainty still remains. When the file wrapper is examined, it is found that the enlargement of the opening is made part of the amended claims, but why this was done is just as uncertain as before. The ambiguity is emphasized, but the doubt is not dispelled. So we have an element shown in the drawings, and counted on in the claims, whose purpose

·is·a mystery, entirely without any use or function. "A patent ambiguity is an uncertainty that arises at once on the reading of the contract. We do not have to wait until some other fact is brought to our knowledge before the uncertainty is apparent, but the doubt is suggested at once, and by the phrase itself." Strong v. Waters, 27 App. Div. 299, 50 N. Y. Supp. 257. A latent ambiguity, on the other hand, is one brought out by extrinsic evidence, where the words, in themselves clear, apply equally well to two different things. Petrie v. Trustees, 158 N. Y. 458, 53 N. E. 216. "Nothing is clearer than the general rule," said Judge Story, in Peisch v. Dickson, 1 Mason, 9, Fed. Cas. No. 10,911, that "latent ambiguities may be removed by parol evidence, for they arise from proof of the facts aliunde; and, where the doubt is created by parol evidence, it is reasonable that it should be removed in the same manner. But patent ambiguities exist in the contract itself; and if the language be too doubtful for any settled construction, by the admission of parol 'evidence, you create, and do not merely construe, the contract."

[2] The question then arises whether the contract between the government and the patentee, expressed by the patent, must not be construed to exclude all reference to the enlarged opening. Hardie's alleged use of the Schaffer bolster as an element of his invention was all before he filed his application. He tried to make it a part of his discovery, but through his solicitors' failure to comprehend was unable to do so. Thereupon he abandoned the only forms of bolsters which could possibly have any functional connection with his real invention, and substituted an ancient form which in and of itself absolutely excluded the only use, function, or novel result he was seeking to obtain. On this basis the patent was issued, the contract made. To allow the patentee now, by parol testimony, to make a wholly different contract, and obtain an entirely different grant, is utterly inadmissible. Even as against the government, the other party to the grant, this would be unauthorized by settled principle, and how much less should it be allowed against the public, in no way bound or concluded by such grant.

In Osgood Dredge Co. v. Metropolitan Dredging Co., 75 Fed. 670, 673, 21 C. C. A. 491, defendant's declarations or admissions tending to show patentability were shown in evidence. "In that class of litigation in which the results can affect no interests except those of the parties to it, the court may well give weight to declarations of that nature; but with reference to a patent for an invention, which is of public concern, such declarations are of little consequence and neither the inventor nor the alleged infringer can be permitted to substitute his own acts or opinions for the judgment of the court. It is a thoroughly well-settled principle of patent law that in clear cases the court may, of its own motion, adjudge a patent invalid, even if its invalidity is not set up by the alleged infringer. Much more would it refuse to be controlled by evidence of this kind which the complainant thus brings to our attention."

"Were it important to inquire which of these two men would be most likely to produce a working machine having the necessary char-

~~teristics, there can be little doubt that Mr. Brush would be chosen. But such an inquiry seems irrelevant. The patent law cannot be administered along such lines as these. Patents are formal grants controlled by carefully drawn statutes and strict rules, and must be construed as other similar documents are construed. The court is not permitted to inquire what the patentee might have done or was capable of doing. The question is, What did he do? Conjecture and speculation are out of place in interpreting the claims of a patent." Coxe, J., in Edison Electric Light Co. v. E. G. Bernard Co. (C. C.) 88 Fed. 267, 275.

On the other hand, the evidence may properly show the prior art, the problem presented to the inventor, and all the surrounding circumstances, in order that the specifications and claims may be read in the light of the inventor's actual knowledge, and such information as the law imputes to him. Field, C. J., in Giant Powder Co. v. California Vigorit Powder Co. (C. C.) 4 Fed. 720, 727, 728. Thus, a broad claim, when applied to the disclosures of the prior art (presumed to be known to the inventor), must be limited accordingly. Rules of construction must be applied, to learn what the claim means. A latent ambiguity arises, and to explain it the court may put itself in the position of the inventor, and seek to know what he knew, and what the law required him to know. But this is quite a different thing from allowing him, by testimony showing what he tried to do, and how he unfortunately failed, to make a new contract, based on evidence never disclosed either to the Patent Office or the public, and which never saw the light until it became necessary for his assignee to broaden the contract, and include something which the patentee gave up, even though he gave it up through mistake of law.

Two cases were cited on the argument in support of the contention that the testimony of Hardie is admissible. These were Ball & Socket Fastener Co. v. Kraetzer, 150 U. S. 111, 14 Sup. Ct. 48, 37 L. Ed. 1019, and Steward v. American Lava Co., 215 U. S. 161, 30 Sup. Ct. 46, 54 L. Ed. 139. In both these cases, however, the testimony was rather in the nature of an admission, made against interest, and was not self-serving in its character, as were the persuasive explanations of the patentee in this case. Technically speaking, Hardie had no interest, because he had assigned his patent; but his statements were not against his interest, he having none, but were in support of his assignee's attempt to broaden the scope of the public disclosure of his specifications and claims.

Disregarding this evidence, as we must, we have the case of an element not defined, vital to the validity of the patent as now construed by appellees, and which is utterly without function or use. Within the loosest construction of the statute requiring full, clear, concise description, the appellees' contention respecting the lawful scope of the patent in suit cannot be sustained. Merrill v. Youmans, 94 U. S. 568, 24 L. Ed. 235; Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Incandescent Lamp Patent, 159 U. S. 465, 16 Sup. Ct. 75, 40 L. Ed. 221.

Within the rules of Blease v. Garlington, 92 U. S. 1, 23 L. Ed. 521, and Nelson v. United States, 201 U. S. 92, 114, 26 Sup. Ct. 358,

50 L. Ed. 673, settling the rule as to the return on appeal of inadmissible evidence taken below, defendant's counsel might have moved before hearing to strike out so much of Hardie's testimony as related to his conferences with his solicitors, and to his real invention, or insisted on the hearing (as they did) upon the objection. Whatever action might have been taken by the court in either event, the evidence would nevertheless be part of the record on appeal, even if struck out by the trial judge. Under the cases cited, and by the common practice, all evidence taken, whether struck out or not, is to go up on appeal.

The decree appealed from is reversed, with direction to dismiss the bill for want of equity.