LEONHARDT v. LYNCH.

(District Court, D. Maryland. October 14, 1912.)

PATENTS (§ 328*)—INVENTION—DUMPING WAGON.

The Leonhardt patent, No. 709,716, for a dumping wagon, *held* void for lack of patentable invention.

In Equity. Suit by William Leonhardt against Francis T. Lynch. On final hearing. Decree for defendant.

George H. Howard, of Washington, D. C., for complainant.

A. V. Cushman, of Washington, D. C., and Mann & Co., of Baltimore, Md., for defendant.

ROSE, District Judge. In this case respondent is charged with having infringed letters patent 709,716, issued to the complainant September 23, 1902. The patent says the invention consists—

"in the construction of the body of a dumping cart or wagon adapted especially for garbage and other noxious materials, which should be exposed as little as possible during transportation, in such manner that, with a given cubical content and a standard wheel gage, the sides thereof, over which the materials have to be shoveled, will be lower than those commonly found in vehicles."

The form of wagon shown in the drawings and described in the specifications of the patent is simple. It includes a flat-bottomed wagon with vertical sides, which sides, at the extreme forward end, are carried up higher than elsewhere in order that they may support a driver's seat. Such seat rests upon the tops of this section of the sides. The sides, except the portion of them which support the driver's seat, are lower than those in the majority of open wagons, but not lower than are often found in such wagons. The sides back of the seat are fitted with outwardly and upwardly flaring extensions. These extensions seem to make an angle of perhaps 45 degrees with the vertical portion of the sides. The tailboard of the wagon is carried up markedly higher than the upward edge of these flaring extensions. At the forward end of the wagon, and back of the driver's seat, the front of the wagon extends up to the same height as that reached by the tailboard. This front and the tailboard support a top which is substantially parallel to the bottom of the wagon. The patent does not say how wide this top should be. From the drawings it would appear that it is of considerable width—not less than one-half the width of the bottom, perhaps as much as two-thirds of it. Two alternative

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

methods of closing the spaces which remain between the outward edges of the top and the outward edges of the flaring extensions are shown in the patent. One is by the use of a set of hinged wooden doors; the other is to fasten a heavy canvas cover to each edge of the top, so that the cover will stay in place when thrown down over the outward edge of the flaring extensions. When the wagon is being loaded, the canvas cover on the side into which the material is being shoveled is thrown back upon the top, and there rests.

Some ten years or more ago the city of Baltimore employed a private corporation to collect garbage and ashes. Complainant was asked by the president of this company to design a type of wagon or cart suitable for such work. He did so. His suggestion was approved. The company ordered from him a number of two-horse wagons, which were constructed in the precise manner shown in the patent already described, and still more one-horse carts. The latter differed from the wagons in two respects only: Their cubical content was naturally smaller. They were made without a driver's seat. The flaring edges extended to the extreme front of the carts. The driver of such a cart walked, or sat on the shafts, or on the top.

Subsequently the city of Baltimore decided that it would do the work of collecting garbage and ashes by its own employés. It took over the plant of the company. The city thus acquired the wagons and carts which had been made by the complainant. It purchased others from him. Still later, when it wanted more one-horse carts, it advertised for bids for furnishing them. These advertisements called for carts like one of the complainant's then owned and used by the city. Respondent put in the lowest bid. The complainant protested that no one other than himself had the right to make carts of that design. The law officer of the city, being of the opinion either that complainant's patent was not valid, or that the form of cart in question was not covered by the patent, advised the municipal corporation to ignore the protest. The contract was awarded to the respondent. He made and sold such carts to the city. This suit followed.

The patent has but a single claim. In the patentee's original application it read as follows:

"In a dumping wagon, the body proper thereof of rectangular shape in cross-section, and provided at the sides with the flaring extensions described; the said extensions having inclined lids substantially as specified."

In this form the examiner rejected it, as anticipated by the prior patents to Bourne, No. 415,895, November 26, 1889, and to Lebach, No. 496,163, April 25, 1893. The complainant amended, by restricting the wagon bodies upon which he claimed a patent to those the edges of the flaring extensions of which were lower than the rectangular portion, and in distinctly specifying that the inclination of the lids of the covers should be downward. As amended, the claim was allowed, without further question or controversy. As it stands in the patent it reads:

"In a dumping wagon, the body proper thereof of rectangular shape in cross-section, and provided at its sides with flaring extensions, the edges of

which are lower than those of the rectangular portion, and downwardly inclined lids or covers for the said extensions, substantially as and for the purpose specified."

If the patent is valid at all, the question as to whether respondent infringes it depends upon what is the "rectangular portion," which the claim makes a standard for the determination of the height of the edges of the flaring extensions of the body proper. Respondent points out that the bottom of the wagon, the portion of the two vertical sides which support the wagon seat, together with the wagon seat, do constitute a "rectangular portion" of the wagon body. He calls attention to the fact that in the drawings no other strictly "rectangular portion" is shown. He asserts that the edges of the flaring extensions shown in the patent drawings are lower than the wagon seat. The carts which respondent has made have no wagon seat. He therefore contends that he has not infringed, because in his construction there is no "rectangular portion."

Complainant says, and says truly, that the wagon seat is no part of his invention. In order that the wagon shall be easily loaded, it is important that the upward and the outward edges of the flaring extensions shall be as close to the ground as they can be made in a wagon of sufficient cubical content. It is utterly immaterial whether they are higher than the wagon seat, or lower than the wagon seat, or whether there is any wagon seat at all. Nevertheless, a rectangular portion of the wagon body is mentioned in the claim. Where, in the structure shown in the drawings and described in the specifications, is it to be found? Complainant says that the edges of the rectangular portion of the wagon, which the claim requires to be higher than the edges of the flaring extensions, are those of the flat top. Its expert argues that if the vertical sides were carried up to the plane of the top, and then the top extended out in a horizontal direction until it intersects these sides as so extended, there would be a perfect rectangle. A cross-section of the covered wagon has eight sides and eight angles. Only two of the latter are right angles. He contends, however, that such section might in common parlance be described as "rectangular."

It is not easy to make out what the invention of the patent is, or even what the inventor supposed it to be. In the patent he says that it consists in so arranging the sides that they shall be lower than those commonly found in vehicles with the same cubical content and a standard wheel gage, and in providing that the material to be carried in the wagon shall be exposed as little as possible during transportation. The portion of the problem which concerns the sides he solved by adding to the vertical portions thereof extensions which flare outward and upward. That was old in the art. He now claims that his invention consists in the combination of a particular cover with these flaring sides.

Covered wagons were old. It is admitted that their covers had been supported upon a rope or pole extending from the front to the rear of the wagon. A cover so supported necessarily inclined downwardly. According to complainant's expert, the distinguishing feature

of his invention is the broad, flat top. This, it is said, facilitates the packing of the garbage into the cart. It may be doubted whether it has any advantage in this respect over an all-canvas cover.

The claim says nothing about the top. The law requires an inventor in his claim particularly to point out and distinctly to claim the part, improvement, or combination which he claims as his invention or discovery. If complainant's invention was what he now asserts it is, he has not done what the law says he must do. An examination of the state of the art at the time complainant devised his wagon, as such state of the art is shown in prior patents, demonstrates that wagons with flaring sides and wagons with downwardly inclined covers were old and common. In view of what was well known and had been frequently described, it is difficult to believe that anything which complainant did required any exercise of the inventive faculty. If he invented anything, it was limited to some particular combination of elements which it was his duty clearly to describe. Seymour v. Osborne, 11 Wall. 541, 20 L. Ed. 33. See, also, Wolff Truck Frame Co. v. American Steel Foundries Co. (C. C. A.) 195 Fed. 940.

His learned and experienced counsel has dwelt much upon the cases which say that sometimes the most convincing evidence that an exercise of the inventive faculty was required is found in the fact that the want had long existed and that the patentee met it, as evidenced by the extensive use into which his invention at once went and the avidity with which others sought to infringe it. There is no such state of facts shown by this record. Complainant made a wagon that suited his customer. It proved useful and convenient for the service. When the city needed more wagons, it ordered more of the same type. It does not appear in the record that otherwise there has been any demand for them.

In accordance with these views, I shall sign a decree holding the patent invalid and dismissing the bill of complaint.