AMERICAN STEEL FOUNDRIES et al. v. BETTENDORF AXLE CO.

(District Court, S. D. Iowa, Davenport Division.   February 17, 1917.)

1. PATENTS ⬿328—VALIDITY AND INFRINGEMENT—CAR TRUCK.

> The Bettendorf patent, No. 740,617, for a car truck, claim 5, if construed not to include as a part thereof the journal boxes, is void for prior publication in the specification and claims of prior patents. If construed to include the journal boxes, *held* not infringed.

2. PATENTS ⬿65—PATENTABILITY—DESCRIPTION IN "PRINTED PUBLICATION."

> A patent and the drawings therein, although the patent may be void, are "printed publications," within the meaning of the patent statute; and if they sufficiently describe the invention to enable a skilled mechanic to produce the structure, with its functions, without the exercise of the inventive faculty, such structure is not thereafter patentable.

> [Ed. Note.—For other definitions, see Words and Phrases, Printed Publication.]

In Equity.   Suit by the American Steel Foundries and the J. S. Andrews Company against the Bettendorf Axle Company.   Heard on cross-bill.   Decree for cross-defendant.

C. C. Linthicum and Geo. L. Wilkinson, both of Chicago, Ill., and Wm. M. Chamberlin, of Davenport, Iowa, for complainant.

C. C. Bulkley, of Chicago, Ill., and Lane & Waterman, of Davenport, Iowa, for respondents.

WADE, District Judge.   On January 25, 1896, James Seymour Hardie filed application for patent upon "a new and improved metallic car truck," upon which, with subsequent amendments, a patent issued October 6, 1896.   On June 1, 1903, William Bettendorf made application for patent for "certain new and useful improvements in car trucks," upon which letters patent were issued October 6, 1903.

In Wolff Truck Frame Co. v. American Steel Foundries et al., 195 Fed. 940, 115 C. C. A. 628, the Circuit Court of Appeals (Seventh Circuit) held (January 2, 1912) the Hardie patent to be void for insufficiency of claim or specification covering the only patentable element in his construction, to wit, a bolster opening in the truck frame larger at the bottom than at the top, so as to admit the end of a bolster constructed with column guides, illustrated in the Schaffer bolster.   On May 15, 1912, the Circuit Court of Appeals of the Eighth Circuit, in American Steel Foundries et al. v. Scullin Gallagher Iron & Steel Co., 197 Fed. 49, 116 C. C. A. 576, followed the aforesaid decision of the Circuit Court of Appeals of the Seventh Circuit and held the patent void.

It will be observed that the Hardie patent was issued October 6, 1896, and the Bettendorf patent October 6, 1903, seven years later. This action, charging infringement, was commenced by the American Steel Foundries and J. S. Andrews Company, assignees of the Hardie patent against the Bettendorf Axle Company, assignee of the Bettendorf patent, on April 6, 1909, some three years prior to the adjudications holding the Hardie patent void.   The case was continued from time to time, evidently awaiting the adjudication of the Hardie patent.

On April 22, 1913, about a year after the Hardie patent was held void, the defendant filed its cross-bill, charging the plaintiff with infringement of the Bettendorf patent. A reply was filed, alleging that the Bettendorf patent was void because of prior art patents and prior knowledge and use; also charging laches and denying infringement.

The case came to trial upon the issues presented by the defendant's cross-bill and replication. Complainants (in view of the fact that the Hardie patent had been held invalid) offered no evidence, and upon the trial asked leave to dismiss their bill, ruling upon which was reserved. Inasmuch as this case proceeds upon the cross-bill and replication, it will aid in clearness of expression to designate the Bettendorf Company as "plaintiff" and the American Steel Foundries and J. S. Andrews Company as "defendants."

[1] The plaintiff (Bettendorf Company) charges defendants with infringement of claim 5 of the Bettendorf patent, which is as follows:

"5. An integral metal side frame for car trucks, the lower portion having a bolster opening therein, which is wider than the upper portion thereof."

Defendants contend that this claim must be construed as limiting construction to an integral truck frame, which must include the journal boxes as part thereof, and, as so construed, it is admitted that the patent is valid, and it does not appear that the same, so construed, has been infringed. The plaintiff contends that claim 5 excludes the journal boxes, and if so (and if valid) there is no question but that it has been infringed.

Construing claim 5 of the Bettendorf patent as excluding the journal boxes, we are confronted with the contention of the defendant that more than two years before Bettendorf invented his side frame for car trucks, or applied for a patent therefor, the same was described in a printed publication in this country; reliance for this defense resting largely upon the patent to Hardie and a subsequent patent to Woods. That Hardie invented the identical thing afterwards patented by Bettendorf (construing claim 5 as excluding the journal boxes) cannot be questioned. In fact, it is admitted by counsel that, if Hardie had procured a valid patent upon his invention, it would have been an anticipation of Bettendorf.

It will be observed that what Hardie invented was a one-piece metal side frame for car trucks; but a one-piece metal side frame was not new in the art, and the patentable novelty devised by Hardie was an opening enlarged in the lower portion for insertion of the end of the bolster, having column guides, or lips, and contracted in the upper portion, so that after insertion the bolster could be lifted up, held in place by springs underneath, and permitted to operate in the contracted portion of the opening. As described in the opinion of the Court of Appeals of this Circuit in American Steel Foundries et al. v. Scullin Gallagher Iron & Steel Co., supra:

"The invention here involved consists in a combination truck having as an essential element a transverse opening in each truck arch or side frame in such a form as enables its use with all kinds of bolsters. This is the only structural novelty relied on. The new feature of this opening is found in the contracted upper portion, whereby a bolster constructed with column guides, integral or otherwise, upon its opposite sides, may be passed through

the enlarged portion of the opening in the side frame of the one-piece side frame, and then be raised into and maintained in contact with the sides of the contracted upper portion of the opening of the arch or side frame, so as to resist any substantial backward or forward movement of the bolster, and make a comparatively rigid connection between the two side frames."

That Hardie actually made this invention is clearly established by the photograph (Plaintiff's Exhibit R) of a wooden model made about 1896, and the printed description thereof upon the back of the photograph, which accurately describes the invention, its uses and functions, as follows:

### "Car Truck—Patent Applied for.

"Truck to be made of steel, cast or pressed, and consists of the following members: Truck arch, oil box lock, spring seat, and spring seat block. The transverse openings in truck arches being so designed as to permit the free passage of truck bolster through opening, when it can be raised to position, the guide lips on bolster engaging flange on truck arch at front, and web of truck arch at back.

"Spring seat block is designed to take up play allowed for the free insertion of bolster spring, also to slightly compress spring. The oil box lock having one end reduced and rounded hooks in suitable opening in truck arch flange, being raised and bolted, firmly engages oil box.

"Only (12) bolts in entire truck, no vital part of truck dependent on a nut or bolt.

"Any or all parts of truck can be replaced by use of hammer, wrench and jacks, requires no special dies, presses, forms, forge, or boiler maker to rivet in case of distortion account of wreck.

"Patent for sale. Correspondence solicited.

"Respectfully,                    J. S. Hardie, El Dorado, Kansas."

Hardie testified that he had sent copies of the photographs bearing this printed description to "various steel casting companies throughout the United States," about or prior to the time the patent was issued; and this is corroborated by the original letter written by Hardie to William G. Kelley, Simplex Railway Appliance Company, Chicago, dated December 1, 1896.

It is also contended that Hardie made a contract for manufacture upon royalty with the American Steel Foundries Company in 1897, and that small models were made as samples, and that two side frames, full size, were completed. The execution of the contract, the making of the models, or the two side frames, is not material to the question at present under consideration, which relates to the prior publication of a description of the invention.

The failure of Hardie to secure a valid patent was apparently through "his solicitor's failure to comprehend" the functional use of the "two-sized" opening as an element of his invention. The court, in Wolff Truck Frame Co. v. American Steel Foundries et al., supra, says:

"Moreover, his story is most persuasive, almost pathetic. His car truck has been highly successful in the hands of his assignee, as evidenced by its enormous sales. The picture of the poor, but brilliant, inventor being cheated out of his valuable discovery by the misapprehension of his solicitors, is an appealing one, well calculated to influence any court."

The great importance of the "two-sized" opening for insertion of the bolster end is understood from an inspection of the illustration of

the Schaffer bolster in the above case. 195 Fed., shown at page 942, 115 C. C. A. 628. It will be observed that near the ends are rigidly fastened substantial metal guides or lips, which form a space in which the column guides of the side frame fit when in place and in operation. It is apparent that, if the opening in the frame were the same width throughout, the end of the bolster could not be inserted without removing the guides or lips. To enable the bolster to be inserted without removing the guides or lips, Hardie conceived the simple device of making the opening wide enough at the bottom to receive the bolster with the guides or lips attached, which could then be lifted up into the contracted space, where it is held by springs while in use.

The drawings filed with application for Hardie patent clearly presented this element. In claim 2, he describes:

"Truck arches rigidly connected with each other, each truck arch having a transverse opening, the upper portion of which is contracted; a truck bolster fitted in the upper portion of said openings, and springs seated in the openings, and below the truck bolster."

In claim 3 he describes:

"A truck having two truck arches, each formed with an opening, the upper portion of which is contracted, and the truck bolster having its ends respectively fitted within the upper portions of said openings, and means within the openings and below the truck bolster by which the truck bolster is held in place, substantially as described."

In drawings, Figure 1 clearly presents the "two-sized" opening with bolster in place, and springs beneath. His failure was to state, in claims or specifications, the function of this two-sized opening, and therefore the court held that, "within the loosest construction of the statute requiring full, clear, concise description," the patent was void.

The Bettendorf patent, in its claims and drawings, presents exactly the same construction shown in Hardie drawings, and in addition properly describes the use or function of the two-sized opening. The Hardie patent, even though void, was a publication, within the meaning of the statute. The drawings of the Hardie patent, aside from the claims or specifications, were a publication.

"Apart from the undisputed testimony of the defendant's expert, the drawings alone must here be relied on; it hardly can be doubted, however, that they show the arched axle to be pivotally connected with and supported by the depending arms of the fifth wheel. Further, the bolt mentioned would seem to afford withdrawable means equally with that feature of Keene's patent; and we think it is clear that through these drawings the device mentioned was 'described' in a 'printed publication' within the meaning of the Patent Act. Section 4886, as amended by Act March 3, 1897, c. 391, 29 Stat. 692; Loom Co. v. Higgins, 105 U. S. 580, 594, 26 L. Ed. 1177; Saunders v. Allen, 60 Fed. 610, 613, 9 C. C. A. 157 (C. C. A. 2d Cir.)." Keene v. New Idea Spreader Co., 231 Fed. 708, 145 C. C. A. 594.

The question here is not whether the Hardie patent presented that "full, clear, concise description" which the statute requires, in order to make a valid patent, but it is a question as to whether or not the patent did in fact disclose the invention in such manner as to enable a person skilled in the art of truck making to fully understand just what Hardie invented.

It is my judgment that any person having knowledge of the art, with the Hardie patent (as a publication) before him, could have made the Bettendorf truck. The functional use of the two-sized opening may not have been described in words, but its use and purpose was obvious. Given a Schaffer or smiliar bolster and a Hardie side frame, it would not even require skill in the art to observe the function or make the adjustment.

"A patent cannot be invalidated by a structure which can only be altered into an anticipation by the use of inventive skill." Waterbury Buckle Co. v. Aston, 183 Fed. 120, 105 C. C. A. 410.

I cannot conceive that the discovery of the function of the two-sized opening (the structure being fully described) involved "the use of inventive skill."

But the art was not limited to the Hardie patent when Bettendorf made his invention. On August 7, 1900, nearly three years previous, patent No. 655,386 had been issued to Woods for "certain new and useful improvements in car truck frame." It cannot be disputed that in its claims and specifications this patent disclosed the functional purpose of a two-sized opening—not in the same form, it is true, but the principle and utility were there disclosed, and this patent was a publication.

When Bettendorf invented his side frame, he is supposed to have had the Hardie publication and the Woods publication before him.

"While he may not have had any knowledge of them whatsoever, he is deemed, in a legal point of view, to have had this [these] and all other prior patents before him." Duer v. Corbin Cabinet Lock Co., 149 U. S. 223, 13 Sup. Ct. 853, 37 L. Ed. 707.

"But it is said that defendant has failed to show any single patent or prior publication which contains all the elements of any of the contested claims, and that 'the question of anticipation' cannot be determined upon a showing from the history of the art that one of the elements may be found here, and another there and so on throughout the entire number. Clearly the facts of the present case do not admit of, much less require resort to, such a course here; too many parts of the present structure are found, as we have seen, in a single prior patent, not to speak of their repetition in each of several earlier patents. It is true, however, that the method suggested by counsel might not of itself justify condemning a patent. It is equally plain that the suggestion is not an answer to the question that must be met here; it overlooks the evidential tendency of the prior art in a given case either to establish or to negative the presence of invention. It scarcely need to be said that courts may and do look into the prior art, for the purpose of ascertaining whether the elements of a claim are new or old, and, if old, whether through the means of comparison so afforded the skill of the mechanic, or indeed the faculty of the inventor, was required to organize the elements of the claim and to adapt them so as to accomplish the result attained. It is not perceived, nor do counsel suggest, what better source of information, what means more calculated to lead the mind to a right conclusion, can be found than in the prior art. True, prior art becomes at times a source of confusion, and even abuse. Still, to insist that claims disclose invention or discovery, where their substantial equivalency in elements, in mode of operation and results, plainly appear in two or more earlier patents or publications, though not all in one patent or publication, is to ignore the very terms of the patent act. Above all, counsel's theory is opposed to the settled course of judicial decision. As was said, in holding a claim to be void for want of invention, in Dilg v. George Borgfeldt & Co., 189 Fed. 588, 590, 110 C. C. A. 568, 570 (C. C. A. 2d. Cir.): '* * * Although all the elements of the claim may not be found in any one patent, it is clear that

they are all to be found in different patents. No single patent may anticipate, but they all have a bearing upon the question whether invention or mechanical skill was involved or required.' Again, in Duer v. Corbin Cabinet Lock Co., 149 U. S. 216, at 222, 13 Sup. Ct. 850, at 853 (37 L. Ed. 707), when affirming a decree dismissing the bill in a patent suit, Mr. Justice Brown said: 'In view of the advance that had been made by prior inventors, it is difficult to see wherein Orum displayed anything more than the usual skill of a mechanic in the execution of his device. All that he claims as invention is found in one or more of the prior patents.' " Keene v. New Idea Spreader Co., supra.

[2] A patent being a publication, the drawings of a patent being a publication, it must follow that, where the invention is sufficiently described in one or more patents (even though they be held void for some statutory reason), so that a skilled mechanic can take the publications and from them, without the exercise of the inventive faculty, produce the structure, with its functions, that such structure is not patentable because it has already been disclosed to the public. The whole matter comes down to a question of contract rights. Assuming that Bettendorf created his invention without any actual knowledge of the Hardie or Woods patents, yet the law fixes certain specific conditions which must exist to entitle him to the monopoly provided by a patent. The law seeks to confer the benefits and privileges of a patent upon the person who is "first to confer on the public the benefit of the invention." Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504.

In contemplation of law, the Hardie publication and the Woods publication gave to the public a description of the very car truck described in the Bettendorf patent. There was nothing subtle or deeply scientific in the constructions described. The patentable novelty was one of those things so simple that one is astonished that it was not thought of by some one long prior to Hardie. Having the Schaffer or a similar bolster in mind, it needed little more than a suggestion to enable even an unskilled person to see that the lower portion of the opening should be enlarged, so as to permit the bolster to be entered without removing guides, lips, or lugs, which might be necessary to hold it in place in operation.

For these reasons, I am convinced that the Bettendorf patent, limited to construction without journal boxes, is void by reason of prior publication, and this conclusion renders it unnecessary to consider the other defenses. As heretofore stated, there is no question made that the Bettendorf patent, construed as integral with journal boxes, is valid; but, so construed, infringement is not shown.

The application for dismissal of the complainant's bill will be granted, and there will be a decree for the defendants upon the cross-bill in accordance with the foregoing, and a judgment against Bettendorf Company for all costs, excepting these made prior to the filing of cross-bill. Counsel will prepare such decree, and submit it to counsel for the plaintiff in the cross-bill, who may file objections and submit for determination.

I do not find it necessary to review the question as to the title of the Bettendorf Company, in view of this determination.