OSGOOD DREDGE CO. v. METROPOLITAN DREDGING CO.

(Circuit Court of Appeals, First Circuit. August 19, 1896.)

No. 167.

1. PATENTS—INVENTION—COMBINATIONS AND AGGREGATIONS.
It is a commonly accepted rule of patent law that the inventive idea is not ordinarily present in the conception of a combination which merely brings together two or more functions to be availed of independently of each other. The mechanism which accomplishes such a result and no more is ordinarily styled a mere aggregation.

2. SAME—DREDGING MACHINES.
There is no patentable invention in the conception of the dredging machine in this case, having a boom adapted to operate either with a scoop,

which is required for hard soils, or with the "clam-shell bucket," which is used in soft soils. 69 Fed. 620, affirmed.

3. SAME—PATENTABILITY—DECLARATIONS OF DEFENDANT.

The fact that defendant, by advertisements and other public declarations, has maintained the patentability of machines of the same general character as that which he is charged with infringing, can have little weight on the question of the validity of the patent; this being a matter of public concern, as to which neither the inventor nor the alleged infringer can be permitted to substitute his own acts or opinions for the judgment of the court.

4. SAME—DREDGING MACHINES.

The Osgood patent, No. 257,888, for a dredging machine or excavator having a boom adapted to operate either a scoop or a "clam-shell bucket," as the character of the soil may require, *held* void as to claims 1 and 3, as being for a mere aggregation, and not a patentable combination. 69 Fed. 620, affirmed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a suit in equity by the Osgood Dredge Company against the Metropolitan Dredging Company for alleged infringement of letters patent No. 257,888, issued May 16, 1882, to Ralph R. Osgood, for a dredge and excavator. The circuit court dismissed the bill on the ground that the patent was void for want of invention as to the claims sued on. 69 Fed. 620. The complainant has appealed.

Paul H. Bate, for appellant.

Rodney Lund and Chas. H. Welch, for appellee.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

PUTNAM, Circuit Judge. The claims in controversy in this patent are 1 and 3. Claim 1 is as follows:

"(1) In a dredging-machine or excavator, the combination, with the swinging boom or crane, carrying the shovel-handle guide, of the pole guides for the clam-shell dipper poles, mounted upon said boom or crane, and adapted to operate substantially in the manner and for the purposes set forth."

It is not necessary to refer to claim 3, as, for the purposes of this case, there is no substantial difference between the two. The history of the art, and the nature of the alleged invention, are described in a full and practical manner by the expert of the complainant below (now the appellant) as follows:

"The particular feature to which the patent is devoted is the construction of a convertible excavator or dredger: that is to say, a dredger which can be converted from the condition necessary for digging soft soils to the condition necessary for digging hard soils, while at the same time the same boat and the same frame (or, as the patent shows, boom) may be employed for either condition. * * * Now, for hard soils what is called a 'scoop' is employed. * * * When soft soils are encountered, the clam-shell bucket is employed. As I understand the art, before the date of the invention of the patent in suit it was customary to construct dredgers either with the appliances necessary for handling the scoop, or to construct them with the appliances for handling the clam-shell bucket. Thus, dredgers were constructed with appliances suitable for hard soils, or with appliances suited for soft soils; and in the course of a dredging operation, where it was supposed the soil was soft, and a dredger provided with appliances for dealing with this soil was on hand, and a hard place in the bottom was unexpectedly reached, work would have to be suspended until a dredger could be brought to the

work which was constructed with the appliances necessary for digging into hard material. Thus, the two conditions had to be met by the use of two dredgers. * * * This condition of affairs, as I understand it, existed in the dredging art up to the date of Osgood's invention; and he conceived the novel idea of so constructing a dredger that his boom or crane would be suited for either form of digging instrumentality,—either a scoop or a clam-shell bucket. To do this he had to provide a boom which was strong enough to stand the severer strain of the scoop, and also had to provide a boom which had upon it the necessary appliances for handling the clam-shell bucket. The clam-shell had to carry poles, and guides had to be provided for these poles, and the chains had to be capable of arrangement for either form of device. Thus, with a convertible machine of this nature, a contractor or other person doing the work could, in a few hours' time, convert his dredger from a machine capable of dealing with soft soil into a machine capable of dealing with hard soil, and vice versa, and this he could do without resort to a machine shop, and with his ordinary crew; and he could do this work without having to have two dredgers, and the incidental expense of two crews, and the outlay of money necessary for two complete machines."

The same expert also makes the following statement:

"The first and third claims relate, as I understand them, to that class of inventions which are described generally by the term 'new article of manufacture'; that is to say, Osgood made a new thing, a new article, something that had never before existed, and which, when it was brought into existence, appeared to the world as a new article or new thing. It was not a new compound but it was a new thing, a new article; and to that class, which I believe is a well-recognized one, the inventions of this Osgood patent relate."

In these expressions the expert, as is too common in the taking of evidence of that class, goes beyond the province of an expert, and into the province of counsel or the court. Whether or not the article to which he refers was "a new article of manufacture," in any substantial sense which has relation to the subject-matter of patents, is a mixed question of law and fact, with which the expert has no concern. To admit his propositions in this behalf would be to admit the entire case, and take it wholly from the court. On the other hand, these propositions are so far from stating the case correctly that it comes plainly within Hailes v. Van Wormer, 20 Wall. 353, 368; Reckendorfer v. Faber, 92 U. S. 347, 356; Brinkerhoff v. Aloe, 146 U. S. 515–517, 13 Sup. Ct. 221; Palmer v. Village of Corning, 156 U. S. 342, 345, 15 Sup. Ct. 381; and Richards v. Elevator Co., 158 U. S. 299, 302, 15 Sup. Ct. 831. It is not necessary to cite any other of the numerous cases of the same class, as these come so close to the one at bar as to dispose of it unmistakably. It is a commonly accepted rule of the law of patents that the inventive idea is not ordinarily present in the conception of a combination which merely brings together two or more functions, to be availed of independently of each other. The mechanism which accomplishes such a result and no more is ordinarily spoken of as a mere aggregation, although this expression is misleading when not used with great discrimination. In the present case, however, it is plain that the conception of the patentee's device did not go beyond what we have described, and that the carrying of the conception into practice required no special ingenuity. Therefore, in any view of the law, we are forced to agree with the circuit court that the device in litigation did not involve the inventive faculty, so that, consequently, the patent before us should never have been issued.

A somewhat closer analysis of the case in some particulars may be useful. Turning to the phraseology of claim 1, in order to a proper understanding of it, in a legal sense, its phraseology should be divided into two parts. As already explained, in substance, the closing words in the claim, "and adapted to operate substantially in the manner and for the purposes set forth," do not, either of themselves, or in connection with what precedes them, contain any conception which is properly inventive. At bar, and in the testimony of the experts, the complainant maintains that, in order to secure an efficient combination. the patentee made mechanical changes by providing a crane or boom of sufficient length and strength; the old form of crane being, as the complainant says, too weak, and the old form of boom too short. The other mechanical changes stated by the complainant are those of attaching to the crane or boom the guide for the shovel handle, as well as the guides for the poles of the clam shell, of properly adjusting the parts, and of properly arranging the chains. The specification makes no reference to lengthening or strengthening the crane or boom, so that, if this was an essential part of the patentee's device, the patent would evidently fail for want of a sufficient description. But all these things were plainly matters of purely mechanical construction and adaptation, of ordinary character. Therefore, as we have already observed, there was nothing in the adaptation to which the claim refers which, either in itself, or in combination with what precedes it in the claim, would entitle any one to a patent for an invention. The part of the claim preceding the words we have cited clearly covers the entire patented device, namely, the combination, in a dredging machine, of a swinging boom or crane, a shovel-handle guide, pole guides for the clam-shell dipper, and poles mounted upon the boom. The mere statement of a claim of this character, in connection with the explanation which we have already given, shows that it amounts to nothing more nor less than any other boom, handle, or other contrivance adapted for carrying different implements or tools to be used independently of each other; thus bringing it clearly and positively within the remarks of the supreme court in Reckendorfer v. Faber, already cited, at page 356. The principle involved is in all respects the same, notwithstanding the boom is many times larger, as that of the handle of the garden rake there referred to by the supreme court, adapted to carrying a hoe on the same end with the rake, or on the other end. If there is any confusion in this respect in the mind of any one, it comes from the fact that the mere difference in the size of things suggests an idea of a substantial difference in other respects. All the expressions, skillfully invented in behalf of the complainant, setting out "a dual capacity of operation," or "a new article of manufacture," disappear, in view of the well-settled rules to which we have referred, and of the analysis of claim 1, when properly made in the manner we have pointed out.

The complainant has pressed upon us advertisements and other public declarations of the respondent maintaining the patentability

of dredgers of the general character of the one in issue. In that class of litigation in which results can affect no interests except those of the parties to it, the court may well give weight to declarations of that nature; but with reference to a patent for an invention, which is of public concern, such declarations are of little consequence, and neither the inventor nor the alleged infringer can be permitted to substitute his own acts or opinions for the judgment of the court. It is a thoroughly well settled principle of patent law that in clear cases the court may, of its own motion, adjudge a patent invalid, even if its invalidity is not set up by the alleged infringer. Much more would it refuse to be controlled by evidence of the kind which the complainant thus brings to our attention.

We have so many times said that the rules by virtue of which we sustained the patent in Watson v. Stevens, 2 C. C. A. 500, 51 Fed. 757, have a narrow application, that we need not trouble to elaborate the fact that they cannot help the complainant in the case at bar. The decree of the circuit court is affirmed, with the costs of this court for the appellee.