H. W. BUTTERWORTH & SONS CO. v. WINSOR & JERAULD MFG. CO.

(Circuit Court, D. Rhode Island. September 13, 1902.)

No. 2,600.

1. PATENTS—INFRINGEMENT—CLAMP FOR TEXTILE MACHINERY.

The Butterworth patent, No. 571,508, for an automatic clamp for textile machinery, is limited by the prior art to the specific mechanism described in the specification. As so limited, claim 6 *held* not infringed.

In Equity. Suit for infringement of letters patent No. 571,508, for an automatic clamp for textile machinery, granted to Harry W. Butterworth November 17, 1896. On final hearing.

Ernest Howard Hunter, for complainant.
Richardson, Herrick & Neave, for defendant.

BROWN, District Judge. This suit is for infringement of letters patent No. 571,508, granted November 17, 1896, to Harry W. Butterworth, for an improvement in automatic clamps for tentering machinery. Claim 6 is in issue:

"In a clamp for textile machinery, the combination of a frame having a clamping-jaw, a movable frame carried by said main frame, a gripping-jaw pivoted to the movable frame, means independent of the jaws to limit the movable frame in one direction, a locking device to limit the movement of the movable frame in the other direction, and a gravity-actuated and cloth-controlled finger for controlling the gripping action of the movable jaw."

The complainant contends that the essence of the invention consists in the combination of an automatic controlling finger with the swinging frame of the clamp. The defendant contends that it does not infringe, for the reason that its clamp does not contain the particular "locking device" which is an element of the combination claimed. The element in the defendant's clamp which the complainant's expert regards as an equivalent for the locking device of the patent in suit is a stiff coil spring. Whether this spring is an equivalent for the locking device of the complainant depends, in my opinion, upon an examination of the substantial character of the complainant's invention. Were it true, as the complainant contends, that the essence of Butterworth's invention consists in the combination of an automatic controlling finger with a swinging frame clamp, then it might be held that the coil spring of the defendant's clamp is an equivalent of the locking device of the complainant. The fact that the spring yields under excessive strain, while it might be an improvement, would not be a sufficient difference to avoid infringement. If the complainant properly could be regarded as the first to bring together in a true combination all the elements enumerated in the claim, and if the locking device were to be regarded merely as a subordinate feature, we would be obliged to say that the spring of

the defendant was an equivalent means for performing a function of the complainant's locking device, though it possessed other advantageous features novel with the defendant.   Butterworth, however, was not the first to produce a clamp containing both a swinging frame and an automatic controlling finger; and he discloses nothing novel in the means of controlling the action of a pivoted gripping-jaw by an automatic controlling finger.   The substance of what he did was merely to adapt a completely organized automatic clamp to use upon a vertical, as distinguished from a horizontal, machine, by pivoting its upper arm so that it could be retracted, and providing this upper arm with a lock to hold it rigidly during the clamping action.   The prior art discloses completely organized automatic clamps, in which the action of a pivoted gripping-jaw is governed by a controlling finger; as in the patents to Smith, No. 404,314, dated May 28, 1889, and to Walker, No. 501,855, dated July 18, 1893.   Butterworth employs a similar organization.   Because the operative parts of such clamps are usually mounted upon rigid jaws, the clamps, while adapted for use on horizontal machines, are not adapted for use on vertical machines, since in the latter the rigid upper jaw, arising from below, is opposed in its upward movement by the cloth.   In his specification Butterworth says:

"The clamps, as heretofore made, have been impractical to permit the fabric to be inserted automatically within the grasp of the clamp, because the upper jaw of the clamp cannot secure a position above the fabric in passing about the end cylinders of the machine.   By my improvements I support the gripping or upper jaw of the clamps upon a movable frame carried with the lower jaw, and combine therewith automatic locking devices which lock or unlock the lower jaw and movable frame relatively in position at or about the time the clamping operation takes place."

Butterworth's problem was the narrow mechanical problem of an adapter or improver.   The automatic clamp had been used upon a horizontal chain, and he desired to use a similar automatic clamp upon a vertical chain.   The prior art discloses a number of nonautomatic clamps, in which the problem of bringing the clamp to the cloth from below had been successfully solved.   It was well known in the art that, to enable a cloth clamp to be used on a vertical machine, the upper jaw of the clamp should be swung back while the clamp is rising into operative position.   It was old to provide a swinging arm, to retract this arm by a cam so that the upper jaw of the clamp was held out of the way of the cloth until the lower jaw was in contact with the cloth, and then to let the upper jaw fall upon the cloth, and clamp it firmly between the upper and lower jaws.   In other words, the problem of bringing a clamp up from below, instead of from the side, had been solved by the use of a pivoted or movable arm, instead of a rigid arm.   This is shown in the British patent to Stewart, No. 192, of 1874, and in the United States patent to Scheider, No. 336,461, dated July 27, 1887.   It being old to bring a nonautomatic clamp to the cloth upon a vertical chain by the use of a swinging frame, it constitutes, in my opinion, neither invention nor a new combination to employ the same means for bringing an automatic clamp to the cloth on the vertical

machine, unless the difference between an automatic clamp and a nonautomatic clamp makes the mechanical problem different. Nothing appears in this record to warrant the finding that the presence of the automatic controlling finger changed the mechanical problem of retracting the arm. Moreover, the English patent to Farmer, No. 4,215 of 1894, claims a swivel jaw pivoted on a movable frame for use in a clamp with or without controlling or checking fingers; i. e., whether automatic or nonautomatic. As was said by the circuit court of appeals of this circuit in Osgood Dredge Co. v. Metropolitan Dredging Co., 21 C. C. A. 491, 75 Fed. 670, 672:

"It is a commonly accepted rule of the law of patents that the inventive idea is not ordinarily present in the conception of a combination which merely brings together two or more functions, to be availed of independently of each other. The mechanism which accomplishes such a result, and no more, is ordinarily spoken of as a mere aggregation," etc.

See, also, Goodyear Tire & Rubber Co. v. Rubber Tire Wheel Co. (C. C. A.) 116 Fed. 363.

The patentee expressly states that he not only supports the upper jaw of the clamp upon a movable frame, but that he combines therewith an automatic locking device, which locks or unlocks the lower jaw and movable frame. His automatic locking devices are governed directly or indirectly by the controlling finger. Mr. Livermore, the expert for the defendant, has testified that, in his opinion, "there is nothing whatever, broadly considered, of substantial novelty in the clamp shown and described in the Butterworth patent; and that the only matters of substantial novelty, even in details of construction and arrangement, reside in the specific construction of locking device for positively holding the overhanging frame in working position, and in the operative connection between said locking device and the automatic controlling device for the movable jaw, by which said locking device is brought into action when the margin of the cloth pulls out from under the controlling device so that the locking of the overhanging frame and the beginning of the clamping action are consecutive parts of a single continued operation." This view I believe to be substantially correct, and upon this view there is clearly no infringement.

The view of the complainant that the essence of the invention is in a combination of swinging frame and controlling finger, I believe to be essentially incorrect. There is no mechanical co-operation between them. Even if it were true that Butterworth was the first to adapt the automatic clamp to use upon a vertical machine, he would not be entitled to monopolize all means for doing this, but only such as are substantially similar to his. The use of a swinging frame cannot be regarded as a novel or peculiar feature with Butterworth, but merely as an employment by him, for its ordinary purpose, of a device common in mechanical arts, as well as in this particular art. Nor do we find it broadly new with Butterworth that a swinging arm is locked during the action of the clamps. The Scheider patent, No. 366,461, dated July 27, 1887, is admitted by the complainant's brief to disclose "a pivoted gripping-jaw, * * * carried by a swing-

ing frame or arm pivoted to the lower fixed jaw, and intended to be locked rigidly to the fixed jaw when the clamp is closed. This locking device consists of a small catch on the swinging frame, adapted to engage lugs on the fixed jaw, and controlled by a cam-operated finger." The complainant's problem being, then, the narrow one of adapting the old automatic clamp to use on a vertical machine, and his use of a swinging frame for this purpose being the use of means well known in the prior art for the same purpose, the substantial difference between the complainant's device and the devices of the prior art is not broadly in the provision of a swinging arm locked during the operation, but narrowly in the specific kind of locking mechanism.

There are further reasons which require us to limit this claim to the specific construction described in the specification. The English patent to Farmer, No. 4,215 of 1894, describes a clamp containing in operative combination all the elements of Butterworth's claim 6. Farmer employs a swinging frame, the upper part of which can be pushed back by suitable guides out of the way of the fabric at the point required, and which is locked during the gripping operation. He also employs controlling fingers to regulate the action of the gripping-jaw. The difference between Farmer and Butterworth is merely a mechanical difference in the manner of combining the parts, and not in elements or functions. While Farmer attaches his controlling fingers to a short check-chain, so that he uses a smaller number of controlling fingers than of gripping-jaws, and while the controllers are not an integral and permanent part of the clamp, yet at the time of action the controllers form substantially a part of the clamp, and the operation of the parts is substantially the same as in Butterworth's clamp. Butterworth has his controlling finger carried either by the movable frame or by one of the gripping-jaws. It is not obvious, however, that this mechanical difference is important, or constituted a practical improvement on Farmer. Butterworth says in his specification that it is customary in practice to form the clamps upon the links of a chain. We are unable to say, upon a reading of the patent, that a number of swinging frame clamps, each provided with a controller, is a better construction than a number of swinging frame clamps with a smaller number of controllers, or substantially different. There is no evidence that the Butterworth clamp has ever been in practical use, and there is evidence that the construction is an impractical one. There is no evidence that the Butterworth clamp is a practical advance upon Farmer. As Butterworth's claim, broadly construed, covers the Farmer combination, the claim is invalid, unless restricted. We cannot restrict it merely by so limiting it as to require the controllers to be pivoted to the frame. It is not apparent that this is a difference of any practical consequence, or which would enable Butterworth to avoid a charge of infringement of the Farmer patent. Farmer says, of his controlling mechanism:

"We do not limit ourselves to the use of chains, as any known mechanical equivalents having the same or similar functions and operating as a checking apparatus or appliance * * * may be employed," etc.

The complainant's expert testifies that a controlling finger like that of the Smith patent could be substituted for Farmer's controlling devices without requiring any change in any other part of the apparatus. To avoid the Farmer patent, then, we must limit the claim by other difference than the manner of attaching the controllers. I am of the opinion that we must find this difference to be what is pointed out by Mr. Livermore,—a difference in the specific construction of locking device, and in the operative connection of locking device and automatic controlling finger. The defendant's coil spring is not, in my opinion, substantially similar to the complainant's locking device. There is no operative connection between defendant's controlling finger and its coil spring. The locking action of the spring is not a positive locking action, but a yielding action, which produces a change of function. While Butterworth is a mere adapter of an old toggle-grip clamp to use in a new position, the defendant has done more than this. By using a spring instead of a rigid lock, he combines in a single clamp the advantageous features of the old spring clamp, to wit, the use of a yielding pressure and of the automatic grip, namely, quick action. What the defendant's clamp has in common with the complainant's, the defendant had, it seems to me, an equal right to take from the prior art. The differences are original and advantageous, and have made the defendant's clamp practical and commercially successful. Upon the whole, I am of the opinion that the defendant does not infringe the complainant's patent, and does not use the substance of anything original with Butterworth in this art.

The bill will be dismissed.