CONDIT ELECTRICAL MFG. CO. v. WESTINGHOUSE ELECTRIC
& MFG. CO.

(Circuit Court of Appeals, First Circuit.   November 6, 1912.)

No. 963.

1. PATENTS (§ 24*)—INVENTION—CIRCUIT-INTERRUPTING DEVICE.
    The Wurts patent, No. 570,416, for a circuit-interrupting device, claims
3 and 4, which cover a plurality of systems of electrical distribution,
each having both an automatic and a hand-operated circuit-closer, in
view of the action of the Patent Office, acquiesced in by the patentee,
in rejecting a claim for the use of both such means in a single system,
are void for lack of patentable invention, which cannot be predicated
of the multiplication of devices, not patentable singly, nor coacting,
which is merely an aggregation, and not a true combination.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 26; Dec. Dig.
§ 24.*]

2. PATENTS (§§ 168, 328*)—CONSTRUCTION—EFFECT OF ACTION OF PATENT OF-
FICE.
    A patentee, who acquiesced in the rejection of a claim by the Patent
Office, is estopped to claim the benefit of such claim, or such a con-
struction of the claims allowed as would be equivalent thereto.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 243½, 244;
Dec. Dig. § 168.*
    Conclusiveness and effect of decisions of Patent Office in proceedings
on applications, see note to Novelty Glass Mfg. Co. v. Brookfield, 95
C. C. A. 530.]

Appeal from the District Court of the United States for the Dis-
trict of Massachusetts; Clarence Hale, Judge.

Suit in equity by the Westinghouse Electric & Manufacturing
Company against the Condit Electrical Manufacturing Company.
Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 194 Fed. 430.

Edward P. Payson, of Boston, Mass., and Clifton V. Edwards,
of New York City, for appellant.

William K. Richardson, of Boston, Mass. (Alexander Salinger,
of Boston, Mass., on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and BROWN, Dis-
trict Judge.

BROWN, District Judge.   This appeal relates to claims 3 and
4 of letters patent to A. J. Wurts, No. 570,416, October 27, 1896,
for circuit-interrupting device.   Claims 3 and 4 are as follows:

"3. The combination with a plurality of systems of electrical distribution
provided with circuit-interrupting devices, controlling-magnets and normally
open local circuits therefor fed by an independent source of current, of means
actuated by an excessive current in any one of the main circuits for closing
the corresponding local circuit, and a plurality of circuit-closing devices lo-
cated at a distant point and each operated at will to close the corresponding
local circuit.

"4. The combination with a plurality of systems of multiphase electrical
distribution provided with circuit-interrupting devices, one for all of the
phases of each system, and controlling-magnets therefor, of a local circuit

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for each of said magnets, means actuated by an excessive current of any phase to close the corresponding local circuit, and a plurality of switches independently operated at will to close any one of said local circuits."

[1] The brief for complainant, appellee, states that the Wurts patent in suit is not concerned with specific mechanisms, and that such well-known mechanisms as are involved are represented merely diagramatically.   It is stated:

"The novelty lies, not in specific mechanism, but in the mode of operation or result brought about by a new combination of devices, which separately were entirely familiar to the electrical art."

In each system of electrical distribution is a circuit-breaker for breaking the main circuit, controlled by a magnet which is energized upon the closing of a local or relay circuit that normally is open. This local circuit, which includes the coils of the magnet, may be closed in two ways: Either by an automatic circuit-closer, which operates upon an overload of current in the main system, or by a hand switch or push button operated at will.   This is a feature of each individual system;  i. e., both automatic and hand control of a local circuit, which energizes a magnet, and thus operates a circuit-breaker to break the main circuit of that particular system. The multiplication of "systems of electrical distribution" does not affect the operation of the circuit-breaker in any one system.   Each system must have a special appliance described as "means actuated by an excessive current."   Each system must have also means operated at will; i. e., a push button or hand switch.   These are combined in a single system and are not combined with a plurality of systems.   Each pair of means, automatic and hand-controlled, co-operates with a single system only, and does not co-operate electrically with any other system.   With a multiplication of systems there must be a corresponding multiplication of local circuits, and of both automatic and hand-controlled means of closing that local circuit.

If the automatic and hand-operated local circuit-closers may be called "protective means," they are means which protect only a single system, and with a multiplication of systems there must be a corresponding multiplication of protective means.   Each separate system requires its separate circuit-breaker, and this circuit-breaker serves to protect only one system and does not assist in protecting any other system.   With a multiplication of systems no greater efficiency in circuit breaking is attained.

Professor Clifford, complainant's expert, in stating the distinction between the Wurts patent and the patents of the prior art, says:

"No one of them, however, sets forth the extremely valuable combination of automatic opening of a circuit-breaker and the opening at will from a remote point by means of a local circuit supplied by an independent source of energy which acts upon the same tripping magnet, either for the automatic opening of the breaker or opening it by hand from a remote point."

This expert further says that it is the combination of automatic and remote tripping in which he finds the broadly novel idea of Wurts.

200 F.—10

It is quite clear that this idea is fully illustrated in a single system of electrical distribution, and as completely illustrated as in a plurality of systems.

The defendant contends that the claims in suit merely mean a multiplication of similar systems or similar devices which do not interact. The complainant contends that claims 3 and 4 show more than a mere multiplication of similar systems. Two points are specially insisted upon: First, the use of a common source of energy for the local circuits of the different systems; second, the assemblage of the push buttons at a convenient point.

There is some confusion in the record arising from the fact that at times the relay circuits are spoken of as a single local circuit, and at times referred to as distinct local circuits. The patentee, however, in claim 3, speaks of "local circuits," and in claim 4 of "a local circuit for each of said magnets." Each magnet has its distinct energizing coil and for purposes of operation its distinct and individual circuit.

In view of the common practice of deriving energy from a single source of electric power, it seems extraordinary to say that independently operating electrical devices are thus brought into patentable combination. Of this Mr. Duncan, defendant's expert, says:

"It is clear that if a number of circuit-breakers are installed, so that a number of electro-magnets are present in the system, any one of these electro-magnets may be energized from a single source of supply, or all of them by means which have been used for many years in ordinary office and house wiring."

He gives as an example the ordinary arrangement of push buttons on a desk to call different rooms by pressing on one or another of the buttons, closing the circuit of corresponding electro-magnets, all of which are normally open-circuited and connected with a common source of current.

The supplying of different relay circuits from a common source of current and the use of the same wires for conducting energy to different circuits, we think, is properly regarded as a mere matter of wiring, and that no more invention is involved in this than in supplying various faucets from a common water main. It would be extraordinary that this should not be done, rather than patentable if it should be done. There is nothing in this which meets the contention that claims 3 and 4 are merely for a duplication of separate devices. Nor does any patentable combination between the different circuit-breakers result from leading the wires of the hand-operated switches to a common switchboard. The electrical apparatus of each system is as distinct as if the push buttons were distributed in the same manner as the automatic circuit-closers. A switchboard is doubtless useful and convenient; but it does not bring the separate systems into operative combination, nor is it patentable. The circuit-breaking devices of the different systems are no more in combination than are a number of printing presses assembled for the general purpose of issuing a daily paper, supplied from the same source of electrical power, and started by push buttons located conveniently for the purposes of the business.

The complainant further contends that the claims in suit are for novel combinations, because no patent in the prior art shows the combination in a single protective system of an automatic circuit-closer and a hand-operated switch. In reply to the defendant's argument that the claims in suit show a mere aggregation or multiplication of independent devices, and not a true patentable combination, complainant asserts that this argument is based upon the false assumption that the combination in a single system of the automatic circuit-closer and hand switch is to be regarded as old. We do not so understand the defendant's argument. As we understand it, the defendant contends that by proceedings in the Patent Office the complainant is now estopped to claim patentable novelty in controlling the local circuit of a particular magnet and circuit-breaker by both a push button or hand switch and automatic means. The original application for the patent in suit contained a claim 6, as follows:

"6. The combination with an electrical distribution circuit, a current-interrupting device therefor, a normally open local circuit and a controlling magnet for said circuit-interrupter included therein, of means actuated by an excessive current in the main circuit for closing said local circuit, and a hand-operated circuit-closing device for said local circuit located at a point remote from said magnet and circuit-interrupter."

This claim was rejected by the examiner, who stated that the use of a hand-operated switch where needed was not patentable. The applicant acquiesced in this decision.

The question whether there was patentable novelty in the use of both automatic and hand-operated devices to close the local circuit was thus expressly passed upon by the examiner. The question was not whether this was disclosed in any prior patent, but the broader question of patentable invention in the use of a push button together with automatic means.

This was a substantial issue. As we understand the defendant's contention, it does not assume that the prior art disclosed exactly what was presented to the examiner in rejected claim 6, but regards this as immaterial. The question of patentability depends, not upon whether prior patents disclose what is claimed, but upon whether what is claimed, even if novel, involves invention as distinguished from ordinary skill of the art.

[2] It is well settled that a patentee, having acquiesced in the rejection of a claim, is estopped to claim the benefit of his rejected claim, or such a construction of his present claims as would be equivalent thereto. Morgan Envelope Co. v. Albany Perforated Paper Co., 152 U. S. 425, 14 Sup. Ct. 627, 38 L. Ed. 500.

The complainant's contention that the claims in suit should be sustained because of the novel features in each system is open, therefore, to two objections: First, that the claims are not for true combinations, but for a mere multiplication of similar and independent devices—for aggregations and not for combinations; second, that the features of each system, even if novel, do not involve patentable invention—in other words, that no invention is involved either in the single device or in a pair of such devices.

It seems quite obvious that, if we must hold that there was no invention in one machine, we must also hold that there is no invention in a mere pair of such machines, even if supplied from a common source of current led to each local circuit by the same wires, and even if the push buttons are assembled upon a common switchboard.

But, aside from the decision of the examiner and reliance upon the doctrine of estoppel, the defendant insists that upon the merits the decision of the examiner was right, and that there was no patentable combination, even in the circuit-breaking means for a single system of distribution.

The automatic means was old. The hand-operated means was old. The operation of one does not in any way affect the operation of the other.

It was well known that a circuit-breaker could be operated by closing a relay circuit that included a magnet. The means employed for closing a circuit were old. Given the conception of applying both closing means to the same local circuit, only ordinary skill was required to make the connection of both means to a single local circuit. The defendant's experts testify that only ordinary skill was needed to add a hand switch to the local circuit, and illustrate this by various examples showing the facility with which this could be done.

As the combination of a circuit-breaker, magnet, and relay to energize the magnet was very old, there is force in the argument that no invention was involved in finding means to close the local circuit, or in applying two old means either separately or together for alternate use, or in the thought of using both means to close a circuit instead of one.

Upon the merits of the question whether in a single system there is a true combination, as distinguished from a mere aggregation, there is at least grave doubt. We do not find any convincing reason for holding that the examiner erred in finding no invention in the rejected claim 6.

But it is unnecessary to consider this question further, for, even were it true that in this patent we could discover an invention of clear merit, we would still be compelled to hold that the claims in suit are for mere aggregations, and not for true combinations. While the courts are reluctant to apply the doctrine of estoppel by proceedings in the Patent Office, we think that this defense is properly raised by the defendant, and cuts under the complainant's argument that patentable novelty in one system was sufficient to support the claims in suit. We are not convinced by the complainant's argument on this point, but regard it as immaterial, for the reason that the basis of this argument is a reassertion of an issue upon which the Patent Office has made a conclusive finding.

The complainant's brief suggests, also, that economy in apparatus and in wiring results from the use of the same local circuit and magnet for both automatic and hand closing of the main circuit; but as the case was presented we are unable to say either that this is a

substantial matter, or that the defendant has gained any substantial advantage in this respect.

As the complainant avers that it is not concerned with specific mechanisms, but with a mode of operation, and as mechanisms are represented in the patent merely diagramatically, we are unable to find in this suggestion of economy in apparatus any sufficient ground for differing with the examiner upon the question of patentable novelty.

For the reasons stated, we are of the opinion that the claims in suit are invalid.

The decree of the District Court is reversed, and the appellant recovers costs in both courts.