L. S. STARRETT CO. v. BROWN & SHARPE MFG. CO.

(Circuit Court of Appeals, First Circuit. November 14, 1913.)

No. 1,031.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MICROMETER CALIPERS.

   The Spalding patent, No. 717,296, for a micrometer caliper, is not invalid as a mere aggregation of old elements operating independently and without change of function, and discloses patentable novelty and invention which entitle it to a reasonable range of equivalents; also, *held* infringed.

PATENTS (§ 322*)—SUIT FOR INFRINGEMENT—REFERENCE FOR ACCOUNTING—SCOPE OF INQUIRY.

   On a reference for an accounting for infringement, the question whether the patent is infringed by another structure not made by defendant until after the bringing of the suit and not passed on by the court, but with respect to which evidence was introduced, may be presented to and ruled on by the master.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 590–595; Dec. Dig. § 322.*]

Appeal from the District Court of the United States for the District of Massachusetts; Arthur L. Brown, Judge.

Suit in equity by the Brown & Sharpe Manufacturing Company against the L. S. Starrett Company. Decree for complainant, and defendant appeals. Affirmed.

See, also, 204 Fed. 588.

Robert W. Hardie, of New York City, for appellant.

Wilmarth H. Thurston, of Providence, R. I., for appellee.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

DODGE, Circuit Judge. The District Court held in this case that United States patent 717,296, issued December 30, 1902, to the appellee company (hereinafter called plaintiff), as assignee of Frank Spald-

ing, was valid, and that the appellant company (hereinafter called defendant) had infringed both the claims thereof.

The patent is entitled "Micrometer Calipers."

[1] The specification begins:

"This invention has reference to an improved device for clamping the spindle of a micrometer caliper or gage."

It then continues:

"Micrometer calipers or gages consist usually of a frame having an anvil at one end and a spindle partly screw-threaded and in screw-thread engagement with the opposite end. These calipers or gages are used in the arts for the accurate measurement of parts and are usually constructed to determine microscopic differences within one one-thousandth of an inch. When the accurate measurement has been taken by a micrometer caliper or gage, it is desirable to lock the spindle, so as to retain the exact position of the same. To lock the spindle and maintain the same in position when the measurement is taken, it is important that the spindle should not be rotated or moved longitudinally in the slightest degree, so that the measurement taken will not be altered."

After which follows the statement:

"The invention consists in the peculiar and novel construction of a split-spring clamping-ring, and means for actuating the same, as will be more fully set forth," etc.

The opinion of the District Court, after quoting as above from the patent, contains the following statement of the essential features of the invention set forth, which we adopt:

"The means for locking the spindle consist of a split clamping-ring arranged to surround the spindle, the clamping-ring having an inclined or tangential surface; an actuating-ring surrounding the clamping-ring; a roller interpose between the split-ring and the actuating-ring and located in the space formed by the inclined or tangential surface; and a projection upon the split-ring which engages a slot in a portion of the frame which forms the bearing of the spindle. The projection and slot prevent the split-ring from turning with the actuating-ring.

"These parts are placed in a transverse slot formed in the micrometer frame or spindle bearing.

"The specification states:

" 'The split-ring $b$ may now be placed into the actuating-ring $c$, the member $b^5$ in the wedge-shaped cavity between the split-ring and the actuating-ring, as is shown in Fig. 3, and the assembled parts may be slid into the slot $a^7$, with the projection $b^1$ in the seat $c^2$. The spindle is now placed in position, extending through the split-ring, which ring is held against rotation.'

"The spindle may be locked by rotating the actuating-ring, thereby moving the roller toward the split-ring, to contract the ring and clamp it on the spindle. It may be released by the reverse movement of the actuating-ring."

There are only two claims, as follows:

"1. The combination with the spindle of a micrometer caliper, the bearing of the spindle, a transverse slot in the bearing and a cavity in the wall of the bearing, of a split-ring, a projection on the split-ring, a tangential plane on the split-ring, an actuating-ring inclosing the split-ring, and a member operated by the actuating-ring and operating the split-ring, as described.

"2. In a micrometer caliper, the combination with the frame of the caliper, the anvil, the spindle, the bearing for the spindle, and the micrometer mechanism, of the slot $a$, the seat $c^2$ in the wall of one side of the slot, the split-ring, $b$, the projection $b^1$ on one face of the split-ring, the plane $b^2$ and shoulder $b^4$ on the split-ring, the member $b^5$, and the actuating-ring $c^1$, as described."

1. The defendant contends that the invention set forth consists only in adding together three sets of old elements, each performing a separate and distinct function, and an old function, in an old way, independently of the others.

These, according to the defendant, are (1) the elements comprising the micrometer proper, (2) those comprising a clamping device, and (3) those whereby the clamping device is connected with the micrometer. Under 3 the defendant includes the transverse slot $a^7$ in the bearing, the seat $c^2$ in the wall on one side thereof, and the projection $b^1$ on one face of the split-ring.

The defendant then contends that nothing beyond a mere aggregation of the several functions of these different elements can result, and that the patent therefore discloses no patentable invention.

As to the set of elements 1, it is true that they can and do perform all the functions of a nonlocking micrometer without bringing into operation the sets of elements 2 and 3; and that a micrometer made according to the patent would perform those functions if the set of elements 2 were removed from it, without involving so much of the set of elements 3 as is not removable—i. e., the slot in the micrometer frame and the seat in one side of the slot.

As to the set of elements 2, constituting the clamping device, it is true that, if removed from a micrometer made according to the patent, they could be so operated as to compress the split-ring by the operation of the actuating-ring and thereby clamp anything which the split-ring could be made to surround; also that, generally speaking, clutches and locking devices may be regarded as devices distinct from the mechanism whereto they may be applied. But the set of elements 2 could not be so removed without removing also an element included by the defendant under 3, namely, the projection $b^1$, which is part of the split-ring.

As to the set of elements 3, which serve to connect the clamping device with the set of elements 1 constituting a nonlocking micrometer as above, it is true that they in no way influence the action of the set of elements 1 in performing the functions of a nonlocking micrometer, nor the action of the set of elements 2, in so far as that action consists merely in the compression of the split-ring, when held against rotation, and the clamping thereby of whatever this ring may be surrounding.

All this may be conceded to the defendant's argument, but we find nothing in it to require or warrant the conclusion that no result other than a mere aggregation of functions is made to appear by the patent. It cannot be said that the mechanism described does no more than bring together the above several functions of the various elements, to be availed of independently of each other, as was the case in Osgood, etc., Co. v. Metropolitan, etc., Co., 75 Fed. 670, 21 C. C. A. 491, where the patentee had provided the swinging boom of a dredging machine with the appliances required for one kind of dredging and also with those required for another; or as was the case in Condit, etc., Co. v. Westinghouse, etc., Co., 200 Fed. 144, 118 C. C. A. 474, where the patentee had brought together a plurality of nonpatentable systems of electrical distribution, similar to each other and each capable of inde-

pendent action. In this case, of the defendant's three "sets of elements," the set 1 is the only one which can produce any useful result, acting alone; and so acting it produces, as has been said, only a nonlocking micrometer. Neither the set 2 nor so much of the set 3 as is separable from the set 1 can produce a useful result by itself, but combined with 1 according to the patent, they produce a locking micrometer. In order to say that the set 2 can be operated at all out of the combination, the defendant has to suppose the split-ring held against rotation by some means not included in 2; but according to the patent the split-ring is to be so held by the combined action of its projection $b^1$ and the seat $c^2$, the former adapted to fit into the latter and the latter adapted to receive the former. The clamping mechanism of the patent is not an independent or detachable clamping mechanism, applicable to the spindle without regard to the mechanism constituting a nonlocking micrometer, but is one adapted to be included in, and to co-operate with that mechanism, in the manner specified in the patent. The defendant's proposition that the combination described produces only a micrometer plus a locking device, plus means for connecting the two, is one which we cannot accept; and we must hold that no want of patentability is apparent from the patent itself.

2. The defendant contends that the patented device has no patentable novelty in view of the prior art. There are earlier patents, as the opinion below states, for micrometer calipers or gages with means for locking the adjusting screw or spindle in position. Some of them show a slot in the micrometer frame to receive an actuating-ring which operates the locking mechanism, and such a slot appears also in a Starrett micrometer caliper, made, according to the evidence, in 1908. But the locking mechanism differs substantially in character in all these devices from that of the patent. Some of them resemble it in surrounding the spindle to be clamped with a split-ring and providing means for contracting the split-ring when desired, but in none of them do the means provided for this purpose resemble in principle those employed for the same purpose in the patent. The locking mechanism approaching most nearly in principle to that of the patent is found in the Clapp patent for a back-pedalling brake, No. 613,619, November 1, 1898, belonging to a nonanalogous art. The split-ring in this patent is not caused to contract by being itself held against rotation, as in the patent, while the balls or rollers are moved into the wedging position by a surrounding actuating-ring, but is itself moved within a surrounding stationary-ring by the rotation of an adjoining and connected sprocket wheel. Without dwelling upon other points of difference between the mechanism described in this patent and that described in the patent at suit, we agree with the court below that nothing in the somewhat complicated structure of the Clapp patent suggests that its form of clutch is better adapted than other clutches for the secure locking of a micrometer spindle and for convenient assemblage with an actuating-ring and a micrometer frame; also, that in its adaptation of a clutch operating upon this principle to the specific purpose of use in a delicate measuring instrument, wherein was involved the problem of locking a spindle with the least possibility of minute disturbance to the

adjustment thereof, sufficient invention to support the patent in suit is displayed. We find nothing in the prior art having any greater tendency than the Clapp patent to support the defendant's claim that no patentable novelty can be found in the patent in suit.

3. The plaintiff brought two alleged infringing devices before the court as part of its case. They were marked as its exhibits, "Defendant's Micrometer Nos. 1 and 2," respectively. It was stipulated that the defendant had made and sold micrometers like them after December 30, 1902, the date of the Spalding patent, and before the plaintiff's bill was filed on August 27, 1908. Both these devices are shown in patents; No. 1 in patent No. 806,594, December 5, 1905, to L. S. Starrett; No. 2 in No. 873,626, December 10, 1907, to L. S. Starrett and J. A. Adell.

In No. 1, an "annular spring tongue," formed out of a cylindrical bushing, which surrounds the spindle, is contracted to clamp the spindle by the operation of an inclosing actuating-ring, in a transverse slot in the frame, upon a ball or roller in a peripheral recess in the annular tongue, adapted to compress the same inward when the ball or roller is moved by the actuating-ring from the deeper toward the shallower part of the recess, as in the plaintiff's patent. We agree with the District Court that so much of the bushing as forms the annular spring tongue of this device substantially resembles the complainant's split-ring; that it is not to be differentiated therefrom because it forms part of a stationary bushing and therefore cannot rotate, instead of being held against rotation by a projection fitting a recess within the wall of the transverse slot; and that the co-operative action of the parts which lock the spindle is the same in both devices. We think the District Court rightly held this to be a device infringing claim 1 of the patent.

As to No. 2, shown in the Starrett and Adell patent No. 873,626, the spindle, as in the patent in suit, is clamped by a split-ring wherein it turns, and this is contracted by means of an inclosing actuating-ring turning in a transverse slot, and operating upon a ball or roller placed in a similar peripheral recess of the split-ring. The only difference between this device and that of the patent in suit is that instead of being provided with a recess to fit a projection from the split-ring, and thereby hold it against rotation, one wall of the slot carries a projection which is engaged by a lateral slot on the split-ring, and thus holds the latter against rotation. The actuating-ring has also a lateral slot which permits of its being removed from or replaced in the transverse slot after the spindle is withdrawn, notwithstanding the projection above mentioned. Removal or replacement of the split-ring in like manner is also made possible by its lateral slot already mentioned. We agree with the District Court that this difference in the method of holding the split-ring against rotation is insufficient to prevent this device from being held to infringe both claims of the patent. The general combination of coacting parts is the same, as is the result which they effect of locking the spindle without the possibility of minute disturbance in its adjustment, and the advantages in assembling which their special features secure.

Spalding's original application had four claims, the two last being those quoted above; the two first were claims of broader scope, as follows:

"1. In a micrometer caliper a clamping device consisting of a split-ring inclosing a spindle, and means for contracting the ring as described.

"2. A combination with a spindle of a caliper or gage and the bearing for the spindle, of a split-ring inclosing a spindle, means for connecting the split-ring with the bearing, and actuating means whereby the split-ring is operated to lock the spindle as described."

These were rejected and canceled, with Spalding's acquiescence. The defendant contends that the result was to limit the present claims of the patent to the precise construction shown and described, and that to give them a scope so broad as to make its two devices above discussed infringing devices is to give them a scope as broad as that of the rejected and canceled claims. We are obliged to agree, however, with the District Court, that the plaintiff's patent as issued shows a sufficient advance over anything in the prior art to warrant the plaintiff's claim to a reasonable range of equivalents, instead of being limited to the exact construction described; nor, in our opinion, does such an interpretation of the patent amount to giving the plaintiff what he sought in vain to obtain by his rejected claims.

4. To a device shown in a still later patent to Starrett, No. 928,889, July 20, 1909, no reference was made in the case until after the plaintiff's prima facie case had been closed and the defendant had. begun to take its proofs. Starrett himself, testifying for the defendant company, whereof he is president, volunteered, in answering a ·cross-interrogatory, the statement that his company had abandoned making an opening in the actuating-ring of its No. 2 micrometer, and had found a way to avoid making such an opening. On redirect examination he was asked to produce one of the devices he referred to. What he then produced is marked "Starrett Latest Micrometer," and will be referred to as No. 3. It appeared that the defendant began making such micrometers in January, 1909, subsequently, therefore, to the filing of the bill.

Later, and before the defendant's proofs were completed, the plaintiff gave notice on the record that it would claim such micrometers to be infringements, stating that the notice was given so that the defendant might have opportunity to examine its expert, who was then testifying about them.

The defendant declined to take testimony to meet the claim that No. 3 infringed, before the plaintiff had taken testimony to support it. In rebuttal the plaintiff's expert gave testimony, against objection, tending to show that No. 3 was an infringing device. The evidence was closed, and the case came on for hearing without any attempt on the defendant's part to meet this testimony by testimony in surrebuttal.

At the hearing, the defendant's objections to the plaintiff's testimony regarding No. 3 were overruled. It moved at the time, and also filed a formal motion after the hearing, for leave to take testimony in answer thereto. This motion was denied, March 28, 1912. The opinion of the District Court, dated November 13, 1912, held No. 3, as

well as No. 2, to be an infringement of both claims of the patent sued on.

The defendant then sought, by petition to this court for writ of mandamus, to obtain the reopening of the case in the District Court; in order, as its petition stated, that it might take proofs in relation to No. 3 "in answer to the prima facie proofs" taken by the plaintiff. In the opinion dismissing this petition without prejudice (204 Fed. 588), it was said that the questions it raised could be brought before us on an appeal in the ordinary way. The District Court had not, at the date of its opinion, entered the interlocutory decree for an injunction and accounting directed by its opinion. Such a decree was subsequently entered (July 11, 1913), and is the decree now appealed from. It adjudges the defendant to have infringed both claims of the patent, but does not specify the particular devices held to infringe, or in respect whereof the defendant is enjoined. The defendant has assigned here as error the conclusion of the District Court that No. 3 was legally before it and that it infringed, also its refusal to reopen the case for further proofs by the defendant on the question whether it infringed or not.

[2] As we have held, the plaintiff had a good cause of action, when the bill was filed, for infringement of its patent by the defendant's devices Nos. 1 and 2. No. 3, which, having been introduced by the defendant, is properly before the District Court and this court for inspection and comparison with Nos. 1 and 2, appears by such inspection and comparison to be not a device of independent and separate character, but a mere change or modification of No. 2. Strictly speaking, however, since it appeared that the defendant had not made this device when the bill was filed, a supplemental bill or petition in regard to it would appear to have been necessary, in order to warrant the District Court in adjudging that it infringed. The grounds upon which the District Court admitted evidence taken regarding it in rebuttal, without a reopening of the plaintiff's prima facie case, do not appear. We are not satisfied from the record that the defendant has had its day in court upon the question of infringement by its device No. 3, and hold, therefore, that for the purposes of the accounting ordered, the question is an open one. We see no reason to doubt, however, that it is a question which may properly be presented to and ruled upon by the master. Hoe v. Scott (C. C.) 87 Fed. 220–1007; Walker, etc., Co. v. Miller (C. C.) 146 Fed. 249, 252. Walker, Patents, § 742. By this course the defendant's rights will be fully secured, both in the District Court and on appeal. No modification will be required in the decree as it stands.

The decree of the District Court is therefore affirmed, and the case remanded to that court for further proceedings in accordance with this opinion; and the appellee recovers costs in this court.