ELLIOTT MACH. CO. v. ROTHSCHILD & CO. et al.

(District Court, N. D. Illinois, E. D. May 31, 1915.)

No. 101.

PATENTS ☞328—NOVELTY—SHOE BUTTON FASTENING MACHINE.

The Elliott patent, No. 765,616, for improvement in shoe button fastening machines, in view of the proceedings in the Patent Office, must be limited to the making of the button feeding tube detachable and supplying the machine with a plurality of such tubes for use with buttons of different sizes, and, as so construed, is void for want of novelty.

In Equity. Suit by the Elliott Machine Company against Rothschild & Co. and the Independent Button Fastener Machine Company. On final hearing. Decree for defendants.

Wilson & Johnson and Luther V. Moulton, all of Grand Rapids, Mich., and Edward Rector and Marquis Eaton, both of Chicago, Ill., for complainant.

Judah, Willard, Wolf & Reichmann, of Chicago, Ill., for defendants Rothschild & Co.

Linthicum, Belt & Fuller, of Chicago, Ill., and Ellis Spear, Jr., of Boston, Mass., for defendant Independent Button Fastener Mach. Co.

SANBORN, District Judge. Infringement suit on patent No. 765,-616, issued July 19, 1904, on application filed September 19, 1896, by Minnie S. Elliott.

Defendants filed separate answers. The Independent Company, in addition to the usual defenses, pleaded a counterclaim that complain-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

ant had established a monopoly of the business of shoe button fastening by machinery, and continued the same after its patents expired, by continuing to give licenses under expired patents, and bringing infringement suits thereon, and threatening such suits, on patents part of which had expired. The proofs did not sustain the counterclaim, and it should be dismissed.

The case involves attachments to machines used in shoe sale stores for fastening buttons on shoes. The buttons of a particular size and color to suit the work in hand are placed in a hopper and fed into a button tube or chute, where they slide by their own weight down to the bottom of the tube. By ingenious and complicated levers, bars, hooks, drivers, benders, fingers, and arms, and a clinching anvil or die, they are automatically strung on wire, the wire cut to the proper length and bent, the threaded button placed in position on the shoe, and the ends of the wire forced through the leather and bent up to secure the button. The operation is all done by one stamp of the foot.

If this suit were brought upon the patent covering the Elliott machine the question presented would be quite different from what it is, but that patent is not sued on. On the contrary, the very unusual situation is presented of a suit on a patent involving only part of a machine, taken out under peculiar circumstances, which makes it difficult to ascertain just how far Mrs. Elliott is the inventor of the combination covered by the first five claims in suit. This arises from the fact that William E. Elliott and his wife, Minnie S. Elliott, each applied for a patent on the same day, September 19, 1896, one for a machine and the other for part of the same machine, and each application contained the same drawings and substantially the same specifications. Each disclosed a button fastener machine. It is claimed by defendants, but not conceded by complainant, that Mr. Elliott invented the complete button fastening machine, with one tube for setting buttons of three or four slightly varying sizes, and that Mrs. Elliott discovered the idea of having several detachable button tubes, so as to accommodate buttons of widely varying sizes. The point was raised at the trial on the cross-examination of Mr. Browne, expert witness for complainant. He was asked whether it was his understanding that Mr. Elliott invented the machine, with a single tube to accommodate three sizes of buttons, and Mrs. Elliott the adjustable tubes, or the use of more than one tube, and he answered in the affirmative. In the same connection counsel for complainant took the position that the whole question was entirely immaterial, and that Mr. Browne's idea was pure speculation. The matter is not referred to in complainant's brief. The claims finally allowed cover rather more than adjustability of button chutes, so it seems necessary to compare the two file wrappers in order to find out the real situation.

In her original application Mrs. Elliott claimed a good deal more than the adjustable chutes, her original first claim being the combination in a button setting machine of a button hopper, a detachable button chute, and mechanism for setting the staple and button. She thus claimed practically the whole machine under the word "mechanism." On the other hand, her husband's claims were much narrower, the first one being for the combination, in a staple driving machine, of a

staple driver, a staple bender, and a lock bar, the latter containing a hook engaging the bender after the staple is formed; and all his other original claims are equally narrow, though they seem to cover, when taken as a whole, all the specific devices necessary to set a button. It will be thus seen that the two parallel applications started out with the idea that Mrs. Elliott was the inventor of the broader idea.

As the applications progressed, however, it appeared that Mrs. Elliott's invention was to adapt a button machine to the use of different sizes and kinds of buttons. This was stated by her attorney in response to the first office action. After the second rejection, her attorney repeated the same idea, saying that the invention intended was that the user of the machine might be provided with different button tubes provided with buttons of varying sizes and shapes, and might instantly remove one tube and insert another. This was claimed to be novel, and of great value; and the Denton prior patent was distinguished, because it contemplated only one chute, permanently fixed to the machine, and the same idea is reiterated all through the proceedings.

Some six years after application the original specification was canceled, and the final one substituted, in which it is stated that "the objects of the invention are to provide a novel construction of chute," readily attached and detached, to render the machine capable of receiving, and operating in conjunction with, chutes of different sizes containing different sized buttons. The new specification then continues:

"I have described in the specification and illustrated in the drawings so much of a machine only as will suffice to render clear the application of my invention. The features of this machine, except so far as expressly claimed herein, are the invention of William E. Elliott and form the subjects-matter of patents issued to him or of pending applications filed by him."

New claims were also submitted counting on mechanism for setting the staple and the button, *in combination* with automatically adjustable button feed mechanism to accommodate different sized buttons, and detachable tubes. These claims were still much broader than any finally allowed in the W. E. Elliott application. Two claims were also submitted for the portable chute as a new article of manufacture, which were disallowed and finally abandoned. The drawings were also entirely changed, and show only the different chutes and one view of the machine with one of the chutes in place.

In response to the first office action taken after the new specification, the position of Mrs. Elliott is somewhat changed:

"Nothing is claimed as to the novelty of the mechanism for the setting of the staple and button, and it is merely intended to make the sense of the claim complete and show the intended operation of the button feed mechanism. *The novel element is the adjustable feed finger* and the detachably connected tube or chute."

It is also explained that the adjustability of the feed finger signifies that the feed mechanism will yield so as to adapt itself to different sizes of buttons:

"One button might be, say, one-eighth of an inch thick and a quarter of an inch in diameter, and it would be fed by the feed finger *20*. The tube con-

taining such size of buttons could be removed, and a tube applied to the machine containing buttons which might be a quarter of an inch in thickness and a half an inch in diameter, which would probably be the extreme range of operation of the machine, and the feed finger *20*, without any alteration in the machine, would also feed the latter buttons by reason of the fact that the feed finger *20* will yield or accommodate itself automatically to the increased size of the button."

The examiner still objected because of the words "in combination," without describing the mechanism for setting the staple, and suggested they should be made to read thus: "In a button machine having," or "provided with, button feed mechanism." This suggestion was adopted by the applicant.

Further proceedings in the Patent Office required the applicant to claim only one chute, because only one could be used at a time. This was conceded, and the patent finally issued, after eight years from application.

During the same period the W. E. Elliott proceedings were dragging along, the patent issuing nine years after application. It appears from the file wrapper contents that the feed mechanism and feed finger action are fully explained, as they are in the patent finally issued. Claim 1 of the Minnie S. Elliott patent and claim 4 of the W. E. Elliott patent are here reproduced to show the relation of the two inventions:

"1. In a button setting machine of the class described, spring-controlled button feed mechanism automatically adjustable to accommodate buttons of varying sizes and operating to deliver buttons to the machine, and a button tube or chute detachably connected to the machine, and mounted in direct operative relation to said button feed mechanism."

"4. In a button attaching machine, the combination of a button feed finger, a feed arm pivotally connected therewith, a feed lever, and a spring connection between said feed lever and finger adapted to allow the feed lever to complete its normal stroke after the feed finger is arrested by the stoppage of the button."

The W. E. Elliott patent thus fully describes the feed finger operation in connection with the chute, and also claims it. Indeed, he could not have an operative machine without doing so. The result is, in view of the disclaimer by Mrs. Elliott and the position taken by her attorney in the Patent Office, that the only thing left for her was to devise a novel improvement to her husband's machine. Obviously she might do this by making a combination including as an element something he had discovered, provided such combination was a novel and useful one. This she attempted by describing and claiming a detachable button tube, and describing a plurality of such tubes, for use with a greater variety of buttons than is contemplated by the other patent.

Thus the question is whether there is any novelty in providing for a number of button chutes in combination with the button setting mechanism. The operation of each is not only identical, but the operation in the original machine of W. E. Elliott is precisely the same. Undoubtedly there is an improved result, just as there was in most of the patents involved in the decisions which have held such a combination invalid. In the jail lock case there was an important moral

advantage, but no different mechanical result. Fond du Lac County v. May, 137 U. S. 395, 11 Sup. Ct. 98, 34 L. Ed. 714. In Osgood Dredging Co. v. Metropolitan Dredging Co., 75 Fed. 670, 21 C. C. A. 491, the patent covered a dredge adapted to operate either a scoop for hard soils or a clam shell for soft soils. Here was an obvious practical advantage, but no improved mechanical result. To the same effect are Ball v. Coker, 210 Fed. 283, 127 C. C. A. 126; Beecher Mfg. Co. v. Atwater Mfg. Co., 114 U. S. 523, 5 Sup. Ct. 1007, 29 L. Ed. 232; Kidd v. Horry (C. C.) 33 Fed. 712; Victor Talking Machine Co. v. Hawthorne Mfg. Co. (C. C.) 168 Fed. 554; Hendy v. Golden State, etc., Works, 127 U. S. 370, 8 Sup. Ct. 1275, 32 L. Ed. 207.

The bill and counterclaim should be dismissed, without costs for or against any of the parties.