# Cases

# THIRD DEPARTMENT

## APPELLATE DIVISION,

### March, 1898.

---

BARZELLE M. STRONG, Appellant, *v.* CYRUS WATERS, Respondent.

*Written contract to drill a well — when a patent ambiguity cannot be explained by parol.*

A written contract by which the party of the first part agrees "to drill a well for party of the second part at $2.50 a foot and furnish pipe for pump without charge, and is to be relieved from all responsibility when he stops drilling; in case of a flowing well to be two dollars per foot," presents a patent ambiguity in that it fails to indicate the precise kind of well contemplated by the parties; and in an action brought to recover upon such contract, parol evidence is inadmissible to show that the defendant had in mind a well which would produce water from the bed rock.

*Semble*, that in such a case the word "well" is to be construed to mean a common or ordinary well.

APPEAL by the plaintiff, Barzelle M. Strong, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Clinton on the 6th day of March, 1897, upon the report of a referee.

The action was brought to recover under a written contract to drill a well for defendant. That part of the contract material to the questions presented reads as follows: "Witnesseth, party of the first part agrees to drill a well for party of the second part at $2.50 a foot and furnish pipe for pump without charge, and is to be relieved from all responsibility when he stops drilling; in case of a flowing well to be two dollars per foot. Party of the second part agrees to pay party of the first part $2.50 for each and every foot so drilled and purchase a pump and cylinder * * *."

The plaintiff drilled a distance of ninety feet. At a distance of twenty-three feet to the rock, and fourteen feet into the rock, he stopped drilling. At that point he had reached water. He subsequently continued to drill a further distance of fifty-three feet into the rock, and then ceased work. No more was done after that. He brings this action to recover, under the contract, for drilling the ninety feet at the rate of two dollars and fifty cents per foot, and also for some tubing and a pump furnished defendant.

The referee found, as a fact, that plaintiff had not completed the well; that the contract was an entire one, and that, therefore, he could not recover. From the judgment entered against him upon this decision the plaintiff brings this appeal.

*S. A. Beeman* and *R. Corbin,* for the appellant.

*Shedden & Booth,* for the respondent.

PARKER, P. J.:

Upon the trial of this action the referee allowed the negotiations of the parties, prior to the execution of the written contract, and also their subsequent conduct under it, to be given in evidence on the part of the defendant and under the plaintiff's objections. He stated that he did not receive it for the purpose of altering or modifying the written contract, and he has found as a fact that the written contract was the only one made between the parties. Nevertheless, he has found that the plaintiff did not complete the well, and has, therefore, dismissed the complaint on the ground that the contract being an entire one, the plaintiff could not recover anything until he had fully performed it. He has also refused to find that the well was incomplete on account of improper piping, and hence it is plain that he has based his decision on the fact that the well did not go as deep as the contract required. Thus it appears that he must have given a meaning to the word " well " derived from the evidence so taken, and the question is presented whether such evidence was properly received for the purpose of explaining the meaning of that word.

The evidence so received was substantially to the following effect : That defendant, during the negotiations, told the plaintiff that he did not want a common ordinary well as he had six or seven on his

farm ; that he wanted to get water from the bed rock hundreds of feet below the surface, and to have the surface water kept out ; and that plaintiff told him he could drill such a well and keep out the surface water, and that he would continue to drill five or six hundred feet if he did not get a flowing well before that. That, subsequently, when plaintiff left the work, after drilling ninety feet in all, some sixty-seven feet of which were in the rock, he told defendant he would come back in the spring and complete the well.

In my opinion there was not such an ambiguity in the written contract as warranted the receipt of the foregoing evidence to explain it.

It may be true that the word "well" does not in itself convey a distinct idea of the precise thing which the parties intended should be produced. There are dug wells, and driven wells and drilled wells. So there are wells of various depths; those intended to furnish surface water only, and those used to bring up water from a great depth below the rocks. And if a contract obligates a party to construct for another "a well," the question is at once suggested, what kind of a well. There is an uncertainty as to the precise meaning in which the phrase to "construct a well" or to "drill a well" is used by the parties. But it is an uncertainty that arises at once, upon the reading of the contract. We do not have to wait until some other fact is brought to our knowledge before the uncertainty is apparent, but the doubt is suggested at once and by the phrase itself. Hence it is an ambiguity which the law terms a "patent ambiguity," and as a general rule such an one may not be cured by proof of what the parties intended by the use of the doubtful phrase. The reason of that rule is said to be "that if a meaning should be assigned by the aid of extrinsic evidence, to that which is apparently destitute of meaning, or if the same instrument should be made to operate in different ways according to the weight of oral evidence, the effect would depend, not upon the instrument, but upon the force of the oral evidence, and thus the latter would be virtually substituted for the former." (2 Am. & Eng. Ency. of Law [2d ed.], 289, 290.) The receipt of this evidence illustrates the propriety of this rule. By adopting the evidence of the defendant as truthful, the referee has construed this written contract to require the plaintiff to drill to a depth sufficient to procure water from the

bed rock. Had he believed the plaintiff's version and rejected that of the defendant, he would have construed such writing to impose a very different obligation.

It is to be noticed that this evidence was not received as defining the usual and ordinary meaning of the word "well." It was received and allowed to define the word "well" as used by the parties to this contract. Defendant testified : "I told him I didn't want a *common, ordinary* well." And thus, under the guise of explaining the word "well," there has been read into this writing an agreement to drill an uncommon and extraordinary well, viz., one that will bring up water from 500 to 600 feet below the surface.

Although the evidence was not received for the purpose of altering or modifying the written contract, the attempt to explain a "patent ambiguity" necessarily results in such an alteration, and it seems to me that the case is before us in substantially the same condition in which it was when reversed upon the former appeal. (80 Hun, 73.)

The record does not show that the plaintiff has anywhere consented to the receipt of this evidence or waived his objection thereto. He duly objected and excepted when it was offered, and his subsequent request to the referee was but a request that he put distinctly upon the record his ruling upon the subject. That ruling, in effect, was, that the evidence was not admissible to vary the written contract, but was admissible to explain it, and in this ruling I think he erred.

This reasoning applies to the case and results in a reversal of the judgment, even if we *concede* that an ambiguity arises in the use of the word "well" without other provisions specifying what kind of a well is intended. But I think it clear that the word, in the written contract, must be considered as used in its usual and ordinary sense — in the sense which the defendant meant when he testified he had six or seven "common, ordinary wells." And clearly in that sense a well drilled 500 or 600 feet deep and sufficient to bring up water from the bed rock below is not indicated. If one drills a well down to the rock and there gets water, I conclude he has performed his contract to "drill a well" in the absence of any further provisions defining the character, depth or purpose of the well. Whether the

plaintiff could recover under this contract for continuing to drill after he had completed the well, is a question not now presented to us.

The written contract further provides that the plaintiff "is to be relieved from all responsibility when he stops drilling," and it is urged upon us that, under this provision, he has the right to stop drilling whenever he chose. I am not at all clear what purpose this provision was intended to accomplish, but if it is to indicate that any different well from the ordinary surface water well was to be drilled, I think it should be construed as securing to plaintiff the right to determine how far he should drill in the effort to get a different one. But its meaning is so obscure that I have not considered it in the view which I have taken of this case.

For the errors above stated the judgment must be reversed.

HERRICK and LANDON, JJ., concurred; MERWIN and PUTNAM, JJ., dissented.

MERWIN, J. (dissenting):

It was stipulated by the respective counsel that no evidence was received by the referee for the purpose of varying or adding to the written contract. No point is made by the appellant as to any error in receiving any such evidence. Both parties evidently intended to follow the decision on the former appeal, and have assumed that it was followed. So I think there is no ruling as to the evidence in that respect that we should consider.

The referee found upon sufficient evidence that, when the plaintiff stopped work in November, 1887, neither party considered the well completed, and the plaintiff did not claim it was completed, but told the defendant that he would return in the spring and complete the job.

The referee found that the plaintiff had not completed the well, and that he could not recover for what he had done, and that the defendant could not recover for the labor, materials and board he had furnished.

Before the plaintiff stopped some water was reached, but the evidence was conflicting as to whether the supply was sufficient to make it a well within the contemplation of the parties. There is no finding that it was such a well, and, therefore, the plaintiff had no

right to recover on the theory that he had completed the well with an adequate supply of water.

The conduct of the parties after a contract is made is admissible for the purpose of showing a practical construction (*Tilden* v. *Tilden*, 8 App. Div. 99); and in this case should be deemed to be controlling in favor of the proposition that the plaintiff did not show a right to recover, unless it be true, as claimed by the plaintiff, that he had an option as to how long he would keep on and could stop at any time and recover the price. That plaintiff had such an option is argued from the expression in the contract, " and is to be relieved from all responsibility when he stops drilling."

No intention to give plaintiff such an option is, I think, manifest from the contract. Why was a pipe provided for, if the existence of a supply of water was not contemplated? If a flowing well, the price was to be less. Why this provision, if plaintiff could, at his pleasure, stop? The reasonable construction of the contract, in the absence of proof of subsequent conduct, would, I think, be that the plaintiff could stop when he chose, and not be responsible to the defendant for damages or for labor, materials or board which the defendant, under the contract, was obliged to furnish, but could not stop and recover the price unless a well, supplying a reasonable amount of water, was furnished for the use of defendant. This construction is fortified very strongly by the subsequent conduct of both parties. The plaintiff, in the evidence given on his part, claimed that when he stopped he tested the water and found an adequate supply, and this was given as a reason for stopping. The referee was, I think, justified in finding that the plaintiff could not recover.

PUTNAM, J., concurred.

Judgment reversed, referee discharged, and a new trial granted, costs to abide the event.