(172 App. Div. 749)

## HOWARD v. BREITUNG et al.

(Supreme Court, Appellate Division, First Department. May 19, 1916.)

1. EVIDENCE ☞448—PAROL EVIDENCE—VARYING TERMS OF CONTRACT.
　　Evidence as to the facts and circumstances existing at the time and surrounding the execution of a written contract is admissible only when the contract is ambiguous.
　　[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. ☞448.]

2. EVIDENCE ☞450(6)—PAROL EVIDENCE—AMBIGUOUS CONTRACT—EXPLANATION.
　　A written contract, whereby defendants employed plaintiff to aid in obtaining a contract from a foreign government, and to form a syndicate to execute the contract with such government, providing that, should the syndicate not be formed within three months from the date, or if the defendants, for any reason abandoned the project, such action should revoke the contract, that the agreement should continue during the existence of the contract with the foreign government, but that either party,

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

or the syndicate, might cancel the contract upon good cause after six months' notice. *Held*, that the contract was not ambiguous, and parol evidence was inadmissible to show that it was intended that defendants might abandon the contract only if a valid contract from the foreign government could not be obtained.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2079; Dec. Dig. ☞450(6).]

3. PLEADING ☞364(2)—MATTERS NOT ADMISSIBLE IN EVIDENCE—STRIKING OUT.

Where proof of the allegations contained in a paragraph of the complaint in an action for damages for a breach of a written contract of employment would not be admissible at the trial, the allegations should have been stricken out.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1156, 1158; Dec. Dig. ☞364(2).]

Appeal from Special Term, New York County.

Action by H. Clay Howard against Edward N. Breitung and others, copartners doing business under the firm name and style of Breitung & Co., Limited. From an order denying their motion to strike out paragraph 3 of the complaint as irrelevant and redundant, defendants appeal. Order reversed, and motion granted.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, SMITH, and DAVIS, JJ.

Otto C. Sommerich, of New York City, for appellants.
Alton B. Parker, of New York City, for respondent.

LAUGHLIN, J. This is an action for damages for the breach of a contract in writing made between the plaintiff and Breitung & Co., Limited, the name under which the defendants were conducting business as copartners. It is recited in the contract that the defendants had expended time and money in securing the enactment of a law authorizing the President of Peru to issue bonds and to enter into a contract for irrigation and colonization, and that the defendants were desirous of obtaining the contract, and to that end employed the plaintiff to take preliminary steps and to enter into negotiations for the contract upon the terms therein stated. The duties which the plaintiff was to perform are specifically set forth in the contract. His first duty was to organize an efficient corps of experts, consisting of an irrigation engineer, a soil expert, a chief quartermaster, or contractor, to construct the irrigation works according to plans and estimates submitted by Peru and approved by the engineers of the defendant, to ascertain upon what terms such experts could be employed and upon what terms acceptable colonists could be secured, and, in the event that colonists with sufficient funds to be self-sustaining could not be procured, to become familiar with the provisions of law with respect to agricultural and credit banks, in order to have the law amended, if necessary. It was provided that it should be the duty of the plaintiff, after completing said organization, to give his time and energies to the formation of a syndicate, to seek, obtain, and execute the contract with Peru, and, after the formation of the syndicate, to hold himself in readiness to go to Peru for the purpose of securing the contract. It was further provided that, if the

contract was secured, the plaintiff was "to become the Lima counsel and representative of the companies that shall execute same, and its general manager, with headquarters in Lima." His duties as such manager were then prescribed, and it was provided that he should receive as compensation for his services in the preliminary work of organizing the corps of experts and the syndicate $5,000 per annum and expenses, and that after the completion of said preliminary work and the organization of the syndicate his salary should be $10,000 per annum and necessary expenses, and also the expenses "for necessary entertainment purposes" while engaged in securing the contract "and prior to the organization of the company to construct said irrigation work"; that after the organization of the company to construct the work his compensation should be $12,000 per annum and expenses, not exceeding $5,000 per annum; that in addition thereto he should receive, as further compensation for the entire services rendered, one-sixth of the total net profits derived from the contracts to be paid as therein provided. The next paragraph of the contract after those provisions is as follows:

"Should the syndicate named not be formed within a period of three months from this date, or should said project for any reason be abandoned by first party at any time thereafter, such action shall operate a revocation of this contract, and neither party shall be under any obligation to the other. But should said project be subsequently taken up and said contract be sought by first party, the terms and obligations hereunder shall revive and remain in full force and effect."

It was next provided that the agreement between the plaintiff and the defendants should continue during the existence of the contract with Peru, but that if either party, "or the syndicate, or their successors or assigns in the companies that shall execute the same with Peru, desire to cancel this contract, it may be done upon good and sufficient cause therefor, six months after notice of such desire shall have been given," and in the event of such cancellation the right and proportion of the plaintiff in and to the net profits should be such "as exist at the time such cancellation becomes effective," and it was further provided that in the event of the severance of the relations of the plaintiff with the defendants, or with the syndicate, or with those representing the interests of the defendants, or the syndicate, the rights and portion of the plaintiff in and to the net profits should be such as exist at the time of severance.

The plaintiff alleges that by mutual consent of the parties on or about the 9th day of July, 1914, and prior to the expiration of three months from the date of the contract, the provisions thereof requiring plaintiff to organize a corps of experts for colonization and to form the syndicate were abandoned until after the contract with Peru was obtained, and it was agreed that he should devote his time and attention to obtaining said contract; that he performed all of his other duties devolving upon him under the contract; that on or about the 11th of August, 1914, defendants executed and delivered to him a power of attorney authorizing him to negotiate and sign a contract with Peru, and that on or about the 6th day of May, 1915, he secured the execution of a contract from the government of Peru in form

and on terms satisfactory to the defendants, and on or about the 27th day of May, 1915, presented and delivered it to the defendants, who ratified and accepted it, and notified the government of Peru of their acceptance, on or before the 20th day of June, 1915, and thereafter, and on the 25th day of June, 1915, the defendant duly executed a power of attorney authorizing one Llona, of Lima, Peru, to execute a contract with the government of Peru in the name of the defendants for the issue of bonds for £2,000,000, pursuant to a law passed by the Peruvian Congress and approved on the 4th of January, 1913; that in the meantime, and prior to the 19th of February, 1915, pending the negotiations for the contract with Peru, there was a contest between the defendants and McArthur Bros. for the contract, and the government of Peru had required each of them to give a guaranty for the faithful execution of the contract by depositing £20,000 in gold in a New York bank to the credit of the government of Peru, and that the defendants notified plaintiff, who was then in Peru, that they had made such deposit, and he so notified the government of Peru in writing; that McArthur Bros. failed to make such deposit, and the contract was awarded to the defendants; that it was further provided, in the contract between the defendants and the government of Peru, that defendants should, within 30 days after they accepted the contract, transfer to a designated bank in Lima, Peru, to the order of the government of Peru, said deposit of £20,000, and on their failure so to do "the celebration of the contract was to remain without effect"; that on or before the 20th day of July, 1915, the defendants obtained an extension of time for such transfer until the 10th of August of that year, but that the defendants in fact had not made the deposit, and failed to transfer the funds, and by their failure so to transfer the funds were guilty of a breach of the contract, and forfeited and abandoned their rights thereunder, without fault of the plaintiff, and against his protest and advice, and thereby forfeited and destroyed his rights and interests in the premises; and on or about the 28th of September, 1915, the defendants declared and notified plaintiff that they had decided to abandon the project, and refused to permit him to further perform or carry out his contract, whereby he suffered damages in the sum of $628,558.85, the particulars of which are set forth.

Evidently with a view to explaining the provisions of the contract between the plaintiff and the defendants with respect to the *abandonment* thereof by the defendants and the effect of such abandonment, the plaintiff pleaded in the third paragraph of the complaint that, prior to the making of the contract and for some time thereafter, there existed to the knowledge of the parties a provisional government in Peru, there being two claimants to the Presidency, which gave rise to a doubt as to whether the government of Peru could make or enter into a valid contract for the issuance and sale of the bonds contemplated by the contract which it desired to obtain from Peru, and that the provisions of the contract between the parties hereto authorizing the defendants to abandon it, or to suspend action thereunder, were inserted—

"solely for the purpose of providing for such an emergency or contingency, and that the controversy was amicably settled or adjusted without a contest for the office of President soon after the execution of a contract between the plaintiff and the defendants, and on or about the 15th day of June, 1914, and that therefore those provisions of the contract authorizing the defendants to abandon it never became operative."

The learned counsel for the respondent contends that in any event the right reserved by the defendants to abandon the contract between them and the plaintiff was to be exercised *before* a contract was obtained from the government of Peru, and that such is the true construction of the contract is indicated by the 'sentence with respect to the revivor of the contract by the resumption of the project and an effort by the defendants to obtain the contract from the government of Peru.

[1] The learned counsel for the appellants contends that the allegations in the third paragraph are irrelevant, for the reason that upon the trial evidence of the facts so pleaded could not be received. He is quite right in his contention that the only theory upon which evidence of the facts and circumstances existing at the time and surrounding the execution of the contract would be admissible is that the contract is ambiguous, and that such evidence is not admissible to aid in the construction of an unambiguous contract. See United Press v. New York Press Co., 164 N. Y. 406, 58 N. E. 527, 53 L. R. A. 288; Corse v. Peck, 102 N. Y. 513, 7 N. E. 810; Strong v. Waters, 27 App. Div. 299, 50 N. Y. Supp. 257.

[2] The learned counsel for the respondents, however, claims that the contract is ambiguous, and that therefore evidence of the facts alleged in the third paragraph would be admissible to explain its meaning. If the evidence would be admissible, the allegations cannot be stricken out as irrelevant. But we are of opinion that the contract is not ambiguous, and that, if the defendants abandoned it within the time contemplated for its abandonment by them, they could not be limited by parol evidence with respect to *the reason for or ground* upon which they abandoned it. If the right of abandonment had been exercised within the time contemplated therefor, the defendants were by the express terms of the contract at liberty to abandon it for any reason, and to admit parol evidence to show that it was intended thereby to indicate that they were at liberty to abandon it only in the event that, owing to political conditions in Peru, a valid contract could not be obtained from that government, would be to vary the plain terms of the contract by parol evidence, which is not permissible.

[3] Since proof of the allegations contained in the third paragraph would not be admissible on the trial, they are irrelevant, and should have been stricken out. Uggla v. Brokaw, 77 App. Div. 310, 79 N. Y. Supp. 244; Kavanaugh v. Commonwealth Trust Co., 181 N. Y. 121, 73 N. E. 562; Isaacs v. Salomon, 159 App. Div. 675, 144 N. Y. Supp. 876; Kolb v. Mortimer, 135 App. Div. 542, 120 N. Y. Supp. 543; Cleminshaw v. Coon, 136 App. Div. 160, 120 N. Y. Supp. 181; Mendelson v. Margulies, 157 App. Div. 666, 142 N. Y. Supp. 825.

It follows that the order should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. Order filed. All concur.